58 F.3d 841
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marcia MILBRAND, Claimant-Appellant,
and
The Premises and Real Property with Buildings, Appurtenances
and Improvements at 731 Gabbey Road, Pembroke, New York,
that is, all that Tract or Parcel of Land, Situate in the
Town of Pembroke, County of Genesee and State of New York,
and more Particularly Described in a Certain Deed Recorded
in the Genesee County Clerk's Office in Liber 524 of Deeds
at Page 167, Defendant.
 No. 1242, Docket 94-6254.
 United States Court of Appeals,
Second Circuit.
 Argued March 22, 1995.
Decided June 21, 1995.
 
 James P. Kennedy, Jr., Asst. U.S. Atty., Buffalo, NY, (Patrick H. NeMoyer, U.S. Atty. for the W.D. of N.Y., Buffalo, NY, on the brief), for plaintiff-appellee.
 Margot S. Bennett, Buffalo, NY, for claimant-appellant.
 Before: OAKES, KEARSE and LEVAL, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Claimant Marcia Milbrand ("Milbrand" or "claimant"), the owner of property located at 731 Gabbey Road, Pembroke, New York (the "property" or "farm"), appeals from a judgment entered in the United States District Court for the Western District of New York following a bench trial before Richard J. Arcara, Judge, ordering the forfeiture of the defendant property to the United States pursuant to 21 U.S.C. Sec. 881(a)(7) (1988), as a result of the use of the property by her son Mark Milbrand ("Mark") to grow marijuana. On appeal, Milbrand contends principally (1) that the district court erred in rejecting her defense that she was an innocent owner, and (2) that the forfeiture violated the Excessive Fines Clause of the Eighth Amendment. For the reasons below, we reject her contentions and affirm the decision of the district court.
 
 I. BACKGROUND
 
 2
 The land in question, an 85-acre wooded parcel in Pembroke, New York, was purchased by Mark in January 1985 for $26,000 cash; most of that money was supplied by Milbrand. In December 1986, Mark conveyed the property to Milbrand for one dollar. Between 1986 and 1990, a house was constructed on the land at an estimated cost of $40,000. The property is not Milbrand's primary residence; she lives some 10-15 miles away in Depew, New York.
 
 
 3
 In August 1990, law enforcement agents conducted a consensual search of the property. They found a total of 1,362 marijuana plants growing on and around the farm, 845 of them on the property itself. Mark told the agents he kept some of his marijuana on the adjacent property "because he did not want to get caught with marijuana on his property." (Hearing Transcript, January 14, 1993, at 54.) Less than 500 feet north of the house, 650 small "starter" marijuana plants were found. A garden hose extended from the house to four plots containing a total of 180 larger marijuana plants; 12 large plants were found in a vegetable garden 80-90 feet east of the house. Inside a barn located 140 feet from the house, 183 harvested marijuana plants were found drying along the wall.
 
 
 4
 Inside the house, the agents found in Mark's bedroom a loaded revolver in a dresser drawer and two other loaded firearms under the bed. A film canister containing marijuana seeds was found on top of a second dresser, and an electronic seed separator was found in the closet. In a cupboard accessible from both the kitchen and the dining room, a small cellophane bag containing marijuana was discovered, and inside a hutch in the dining room several packages of cigarette rolling paper and a silver marijuana pipe were found. Canisters containing marijuana seeds labeled by year, size, quality, and height were found in the basement.
 
 
 5
 Mark was convicted in state court, after a plea of guilty, of criminal possession of marijuana. The United States commenced this action in the district court seeking forfeiture of the defendant property pursuant to, inter alia, 21 U.S.C. Sec. 881(a)(7). Milbrand filed a claim to the property and contended that the property was not subject to forfeiture because she owned it and was innocent of any wrongdoing. She also contended that a forfeiture of the property would violate the Excessive Fines Clause of the Eighth Amendment.
 
 
 6
 In January 1993, the district court held a six-day bench trial and heard testimony from Milbrand and law enforcement agents. One agent testified that Mark had previously been arrested in 1980 for growing marijuana while living in Milbrand's residence. In connection with that arrest, officers executed a search warrant at Milbrand's home; in her garage, they found 1,000 containers of marijuana seeds; in her basement, they found marijuana plants, packaging material, and plant lights. In Mark's bedroom in Milbrand's home, they found in plain view, marijuana, marijuana packaging material, scales, photographs of Mark standing next to tall marijuana plants, and books on growing marijuana. At least one of the books had a picture of a marijuana plant with the word "Marijuana" on the cover. Another agent testified that at the time of the search of the property at issue here, Milbrand told him "that she was aware that Mark had a problem with marijuana, that he had been arrested several years prior for growing marijuana at her house in Depew, and she told me that Mark--or that they built the farm so that Mark would have a place to do his farming." (Hearing Transcript, January 14, 1993, at 82.)
 
 
 7
 As to the property at issue here, Milbrand testified that she visited the farm once a week to cook, clean, and do her son's laundry, but that she did not have knowledge of her son's marijuana farming. Although admitting that she had gone into cabinets and drawers where the police later discovered marijuana, drug paraphernalia, and a handgun, she testified that she did not see those items.
 
 
 8
 In a Decision and Order dated August 1, 1994 ("Decision"), the district court denied Milbrand's claim. Crediting the testimony of the law enforcement officers, the court expressly found that Milbrand's testimony was not wholly credible, stating, inter alia, that her "demeanor indicated that she was shading the truth on certain matters." Id. at 10. The court concluded that the defendant property was forfeitable, finding that the property had been used to facilitate a narcotics felony, and that Milbrand was not an innocent owner as she
 
 
 9
 would have to have been blind not to have been aware of her son's marijuana activities, or would have to have consciously and purposefully ignored signs of such activities. The evidence clearly established that [Mark]'s involvement with marijuana was so substantial and the evidence of that involvement so pervasive, both inside and outside the house, that it is difficult for the Court to believe that claimant was not aware of it. Her testimony to the contrary is simply not credible. In addition, the Court finds that claimant was well aware of her son's marijuana activities dating back to at least 1980 and his prior arrest.
 
 
 10
 Id. at 21.
 
 
 11
 The district court also rejected Milbrand's excessive-fines contention, stating, inter alia, that "[t]his is not a case where a small amount of drugs was found in a discrete part of the defendant property on one single occasion. To the contrary, [Mark] used the entirety of the defendant property to further his advanced drug enterprise." Id. at 23.
 
 II. DISCUSSION
 
 12
 On appeal, Milbrand argues that the district court erred in rejecting her innocent-owner defense and her Eighth Amendment excessiveness contention. We reject both arguments.
 
 A. The Innocent-Owner Defense
 
 13
 Section 881(a)(7) of Title 21 provides that a parcel of real property that has been used to commit or to facilitate the commission of a narcotics felony prohibited by subchapter 1 of Chapter 13 of 21 U.S.C. (Secs. 801-904) is forfeitable to the United States, unless the owner can establish a degree of innocence:
 
 
 14
 no property shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 15
 21 U.S.C. Sec. 881(a)(7); see United States v. Certain Real Property and Premises, Known as 890 Noyac Road, 945 F.2d 1252, 1255 (2d Cir.1991); United States v. Premises and Real Property at 4492 South Livonia Road, 889 F.2d 1258, 1267 (2d Cir.1989). Once the government has established probable cause to believe the property has been used to facilitate such an offense, persons claiming to be innocent owners have the burden of "prov[ing], by a preponderance of the evidence, that the narcotics activity on the property occurred without their knowledge or, if they had knowledge of it, without their consent." United States v. Two Parcels of Property Located at 19 and 25 Castle Street, 31 F.3d 35, 39 (2d Cir.1994). "[W]here an owner has engaged in willful blindness as to activities occurring on her property, her ignorance will not entitle her to avoid forfeiture." United States v. One Parcel of Property, Located at 755 Forest Road, 985 F.2d 70, 72 (2d Cir.1993) (internal quotes omitted).
 
 
 16
 Matters of knowledge and willful avoidance of knowledge are questions of fact, and the district court's findings as to those facts may not be set aside unless they are clearly erroneous. See Fed.R.Civ.P. 52(a); United States v. Real Property & Improvements Located at 5000 Palmetto Drive, 928 F.2d 373, 375 (11th Cir.1991) ("Determination of an innocent owner claim may be reversed only if clearly erroneous."). Assessment of the credibility of witnesses is peculiarly within the province of the trier of fact and is entitled to considerable deference. See Anderson v. Bessemer City, 470 U.S. 564, 573-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Id. at 575, 105 S.Ct. at 1512. The factfinder's credibility assessments remain entitled to deference even when a substantial period of time has elapsed between the trial and the issuance of the decision.
 
 
 17
 In the present case, there is no dispute as to the government's establishment of probable cause. A total of 1,362 marijuana plants were found growing on and around the property, 845 of them on the property itself. In addition,
 
 
 18
 [t]he house was used to store seeds, guns and marijuana; the barn/greenhouse was used to dry and strip the plants, as well as house the pots in which the marijuana grew; garden hoses extended from the buildings to the marijuana fields to provide irrigation; a distinct area of the defendant property was devoted to growing "starter plants"; larger plants were transported across the defendant property and through a path to several marijuana fields; and guard dogs kept watch over the marijuana fields.
 
 
 19
 Decision at 23-24.
 
 
 20
 The trial court's finding that Milbrand's testimony that "she never saw [Mark's] substantial marijuana crop" was "not credible," Decision at 10, was supported by the magnitude of Mark's marijuana growing operation on the property, with some large plants growing within 80 feet of the house, and by Milbrand's own testimony that in cleaning and putting away laundry on the defendant property, she had gone into cabinets and drawers where the police later discovered marijuana and drug paraphernalia. The court's finding that Milbrand either knew or deliberately avoided knowing of the unlawful use of the defendant property in 1990 was also supported by the testimony of law enforcement agents, which the court expressly found credible, as to Mark's 1980 arrest for growing marijuana and the items seized at that time from Milbrand's house, and as to Milbrand's statement at the time of the search of the defendant property that she had been aware of the previous arrest and of Mark's problem with marijuana.
 
 
 21
 In light of the record and the credibility assessments made by the trial court, we cannot conclude that there is clear error in the court's findings that Milbrand either knew of or deliberately closed her eyes to the fact that her son was growing marijuana on the property. Accordingly, we uphold the finding that Milbrand was not an innocent owner.
 
 B. The "Excessive Fines" Clause
 
 22
 The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) ("Austin "), the Supreme Court ruled that an in rem civil forfeiture under 21 U.S.C. Sec. 881(a)(7) constitutes punishment and, as such, is subject to the limitations of the Excessive Fines Clause of the Eighth Amendment. The Austin Court declined, however, to delineate the factors that should inform a determination of whether a given civil forfeiture is constitutionally excessive. See id. --- U.S. at ----, 113 S.Ct. at 2812.
 
 
 23
 With respect to punishments other than in rem civil forfeitures, the Court has indicated that a monetary penalty will be considered excessive within the meaning of the Eighth Amendment when there is a lack of proportion between the gravity of the offense and the harshness of the penalty. In Alexander v. United States, --- U.S. ----, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), a criminal in personam forfeiture case decided the same day as Austin, the Court stated that the lower court's view that, with respect to forfeitures, the Eighth Amendment did not require any proportionality review was pertinent only to the Eighth Amendment's prohibition against cruel and unusual punishments, not to its prohibition against excessive fines. The Alexander Court stated that the matter of whether or not the forfeiture was excessive must be assessed "in the light of the extensive criminal activities which petitioner apparently conducted ... over a substantial period of time." --- U.S. at ----, 113 S.Ct. at 2776.
 
 
 24
 In Austin, Justice Scalia wrote separately to express the view that, although proportionality between the offense and the size of the punishment is relevant to an Eighth Amendment excessiveness analysis with respect to monetary fines and in personam forfeitures, the analysis of in rem forfeitures should be different because, "[u]nlike monetary fines, statutory in rem forfeitures have traditionally been fixed, not by determining the appropriate value of the penalty in relation to the committed offense, but by determining what property has been 'tainted' by unlawful use, to which issue the value of the property is irrelevant." Austin, --- U.S. at ----, 113 S.Ct. at 2815 (Scalia, J., concurring in part and concurring in the judgment). Therefore, in Justice Scalia's view, the excessiveness inquiry as to in rem forfeitures should focus solely on the nature of the relationship between the property and the offense: "the question is not how much the confiscated property is worth, but whether the confiscated property has a close enough relationship to the offense." Id. (emphasis in original).
 
 
 25
 The majority in Austin noted Justice Scalia's view and stated that the relationship of the offense to the property might be one factor in excessiveness analysis, but it refused to eliminate the possibility that consideration of other factors might also be proper. See --- U.S. at ---- n. 15, 113 S.Ct. at 2812 n. 15. The Austin majority preferred to allow the lower courts freer rein to consider the proper bounds of Excessive Fines Clause analysis in the first instance.
 
 
 26
 In the wake of Austin, the Fourth Circuit has largely adopted the instrumentality analysis espoused by Justice Scalia. See United States v. Chandler, 36 F.3d 358 (4th Cir.1994). The Chandler court noted that
 
 
 27
 [s]ince Austin, a few courts have begun to formulate tests for determining the excessiveness of a forfeiture in civil proceedings. These cases seem to recognize two approaches to an excessiveness inquiry, one utilizing the instrumentality principle proposed by Justice Scalia in his concurring opinion in Austin, and the other adopting the traditional Eighth Amendment proportionality principle articulated in Solem v. Helm, 463 U.S. 277 [103 S.Ct. 3001, 77 L.Ed.2d 637] ... (1983).... The tendency of the courts ... has been to combine the two principles of instrumentality and proportionality to come up with various multi-factor tests.
 
 
 28
 36 F.3d at 363. Relying on the historical basis for in rem forfeitures, see generally Austin, --- U.S. at ---- - ----, 113 S.Ct. at 2806-10, the Chandler court concluded that the value of the property was irrelevant, and that the court should focus principally on the role of the owner and the extent of the criminal use of the property:
 
 
 29
 we now hold, in determining excessiveness of an in rem forfeiture under the Eighth Amendment, that a court must apply a three-part instrumentality test that considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder. In measuring the strength and extent of the nexus between the property and the offense, a court may take into account the following factors: (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense. No one factor is dispositive but, to sustain a forfeiture against an Eighth Amendment challenge, the court must be able to conclude, under the totality of circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offensive conduct been carried out as intended.
 
 
 30
 36 F.3d at 365.
 
 
 31
 Other courts, as noted in Chandler, have included a proportionality analysis, giving consideration not only to the extent of the illicit use of the property but also to the monetary value of the property forfeited. See, e.g., United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, 27 F.3d 327, 330-31 (8th Cir.1994) (expressing, obiter, dissatisfaction with a pure instrumentality test, and indicating that the district court should consider factors such as, the "monetary value of the property, the extent of criminal activity associated with the property, the fact that the property was a residence, the effect of forfeiture on innocent occupants of the residence, including children, [and] any other factors that an excessive fine analysis might require"); United States v. Premises Known as RR # 1, 14 F.3d 864, 874-75 (3d Cir.1994) (indicating that some proportionality analysis is required, including consideration of the seriousness of the offense, the defendant's culpability, and the extent to which the defendant's interest is tainted by the criminal conduct).
 
 
 32
 This Court has not addressed the question of Excessive Fines Clause analysis in the context of a property owner who was not the perpetrator of the offense. We are guided in part, however, by United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, 954 F.2d 29, 35 (2d Cir.) ("Whalers Cove "), cert. denied, --- U.S. ----, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). Accord United States v. Premises Known as RR # 1, 14 F.3d at 874 ("the factors articulated in 38 Whalers Cove Drive, may offer some help in analyzing the excessiveness issue"). Whalers Cove was a pre-Austin case in which we considered the Eighth Amendment contentions of an owner convicted in state court of the narcotics offenses on which the forfeiture was based. The claimant Levin twice sold cocaine inside his condominium to a confidential informant. The quantity totaled no more than 2 1/2 grams; the total sales price was $250. The confidential informant had requested that the first sale take place inside the condominium; the record was unclear as to who had suggested that the second sale take place there. Except for a small third sale that took place outside the condominium, Levin declined to make further sales despite frequent additional requests by the informant. Levin was eventually arrested by local authorities; he pleaded guilty to a state-law offense and received a sentence of probation and a small fine. A search of his condominium did not turn up any indication of narcotics activity. As a result of Levin's conduct, the federal government commenced an in rem forfeiture proceeding against the condominium, whose value was $145,000, and in which Levin had an equity interest worth $68,000. We rejected Levin's arguments that the forfeiture of that interest as punishment for $250 in narcotics sales violated the Cruel and Unusual Punishment Clause of the Eighth Amendment or its Excessive Fines Clause, stating that
 
 
 33
 [t]he Eighth Amendment proscribes only extreme punishments. Even assuming that the entire amount of the forfeiture here is punishment, it does not violate the outer confines set by the Eighth Amendment.
 
 
 34
 Whalers Cove, 954 F.2d at 38. We noted that the distribution of narcotics, even in quantities as small as those sold by Levin, is a grave offense, for which a defendant could be fined $50,000 under New York law, $100,000 under Vermont law, and $1 million under federal law. We concluded that in light of this range of possible fines, a forfeiture of $68,000 was "not a grossly disproportionate punishment within the meaning of Eighth Amendment jurisprudence." Id. at 39. With respect to the Excessive Fines Clause in particular, we stated that "[w]e need not decide at exactly what point a fine or forfeiture might violate the Excessive Fines Clause, for wherever such a line could be drawn, this forfeiture would be proper." Id.
 
 
 35
 We regard Whalers Cove as instructive, for it principally used a proportionality analysis in reaching the conclusion that the forfeiture at issue there was not excessive. Nonetheless, Whalers Cove involved an owner who was convicted of the narcotics offense on which the proposed forfeiture was based, and the analysis compared only the value of the property against the gravity of the offense and the fines that could be imposed against the owner for that offense. We regard this as consistent with the Alexander Court's view that the excessiveness inquiry should involve analysis of the amount of the penalty in light of the extensiveness of the convicted owner's criminal activities. Where the owner of the property is not the perpetrator of the crime, however, a consistent approach requires analysis of the amount of the penalty in light of the role and culpability of the owner in the illicit use of her property. Thus, we join those courts that have concluded that appropriate excessiveness analysis entails a multi-factor test combining the principles of both instrumentality and proportionality. In our view, the factors to be considered by a court in determining whether a proposed in rem forfeiture violates the Excessive Fines Clause should include (1) the harshness of the forfeiture (e.g., the nature and value of the property and the effect of forfeiture on innocent third parties) in comparison to (a) the gravity of the offense, and (b) the sentence that could be imposed on the perpetrator of such an offense; (2) the relationship between the property and the offense, including whether use of the property in the offense was (a) important to the success of the illegal activity, (b) deliberate and planned or merely incidental and fortuitous, and (c) temporally or spatially extensive; and (3) the role and degree of culpability of the owner of the property.
 
 
 36
 The ruling of the district court that the forfeiture in the present case did not violate Milbrand's rights under the Excessive Fines Clause fits well within this standard. The manufacture and possession of narcotics with intent to distribute are serious offenses, and though marijuana is not regarded as being as dangerous as, e.g., cocaine, the large quantity of marijuana at issue here was sufficient to expose its possessor to very substantial penalties. In a federal prosecution, for example, the 1,362 marijuana plants that Mark was growing on and around the property would have been treated as at least 1,362 kilograms of marijuana and the equivalent of 5-15 kilograms of cocaine, see 1990 federal Sentencing Guidelines Sec. 2D1.1(c)(6) & n. * (Drug Quantity Table); and a person convicted of an offense involving those plants would have been subjected to a fine of at least $4 million, see 21 U.S.C. Sec. 841(b)(1)(A)(vii) (1988). Even if only the 845 plants Mark had not moved off the property were taken into account, a fine of $2 million could be imposed.
 
 
 37
 The value of the property at issue here is not entirely clear, but it was shown that the land had been purchased for $26,000 and had recently been improved by the addition of a $40,000 house. Certainly considering that in Whalers Cove we upheld the forfeiture of a $68,000 interest apparently fortuitously used for two isolated sales of 2 1/2 grams of cocaine for $250, the forfeiture here of property having a value perhaps close to $68,000 as punishment for its intentional and pervasive use to grow a quantity of marijuana regarded as the equivalent of 5-15 kilograms of cocaine cannot be regarded as excessive in comparison to the nature of the offense.
 
 
 38
 Further, the relationship of the property to the marijuana crop was obviously intimate and integral. As the district court found, "[t]his is not a case where a small amount of drugs was found in a discrete part of the defendant property on one single occasion. To the contrary, [Mark] used the entirety of the defendant property to further his advanced drug enterprise." Decision at 23. Nor could it be suggested that this use of the property was only a recent development; in connection with his August 1990 arrest, Mark complained to the law enforcement agents that his marijuana plants had been stolen "in past years."
 
 
 39
 Finally, as to the role of Milbrand, though she was not prosecuted for or convicted of any offense, the court's findings plainly indicated that she had a significant degree of culpability in the criminal use of the property. The court found that Milbrand "would have to have been blind not to have been aware of her son's marijuana activities, or would have to have consciously and purposefully ignored signs of such activities," and it found that her testimony that she was not aware was "simply not credible." Decision at 21. Those findings are amply supported not only by the evidence of Milbrand's frequent visits to the property, the proximity of numerous plants to the house, and her forays into cabinets and drawers where marijuana and drug paraphernalia were found, but also by the evidence relating to Mark's previous arrest for growing marijuana while living in Milbrand's own residence. Just prior to that arrest, the officers had found, inter alia, 1,000 containers of seeds in her garage, marijuana plants growing under strong lights in her basement, and in plain view in Mark's room in her home, marijuana, marijuana packaging material, scales, photographs of Mark standing next to tall marijuana plants, and books on growing marijuana. Admittedly aware of Mark's involvement in growing marijuana, she proceeded to buy him a farm.
 
 
 40
 We conclude that the district court properly rejected Milbrand's contention that the forfeiture of the property violated the Excessive Fines Clause of the Eighth Amendment.
 
 CONCLUSION
 
 41
 We have considered all of Milbrand's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.