ONE 1995 TOYOTA PICK–UP TRUCK
(Braulio Esparza, Claimant),
Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 96–CV–1494.

District of Columbia Court of Appeals.

Argued March 6, 1998.
Decided Oct. 1, 1998.

David B. Smith, Washington, DC, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Claimant Braulio Esparza solicited a supposed prostitute (actually an undercover police officer) in violation of D.C.Code § 22–2701(a) (1996). As a first offender, he was subject to a maximum statutory penalty of $300 but was fined $150. The appeal before us is from an *in rem* civil forfeiture action brought under the Safe Streets Forfeiture Act of 1992, D.C.Code § 22–2723 (1996), against the truck from which Esparza accomplished the solicitation.

The primary question presented is whether the forfeiture of the truck, valued at $15,-500, violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.[1] We hold that the legal test authoritatively established in June of this year by the Supreme Court in *United States v. Bajakajian*, ——— U.S. ———, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998),[2] compels the conclusion that the attempted forfeiture here would violate the Excessive Fines Clause.

### I.

The facts necessary to the disposition of this appeal are undisputed by the parties. On June 23, 1995, Esparza drove his 1995 Toyota pick-up truck to the 1300 block of L Street, Northwest, and solicited a woman he thought to be a prostitute to engage in a sexual act. The woman, an undercover police officer, quoted, and Esparza accepted, a price for the consummation of the act, after which Esparza was placed under arrest. On August 30, 1995, Esparza pled guilty to sexual solicitation, a violation of D.C.Code § 22–2701(a), and, as a first offender, received a fine of $150, which he paid in full.[3]

1. Esparza also raises a double jeopardy challenge to the forfeiture, an issue we need not address in light of our reversal on Eighth Amendment grounds.

2. After oral argument, we held this appeal in abeyance pending decision by the Supreme Court of that case and supplemental briefing by the parties addressing the decision.

3. The version of § 22–2701 in effect at the time of Esparza's arrest read as follows:

(a) It shall not be lawful for any person to invite, entice, persuade, or address for the purpose of inviting, enticing, or persuading, any person or persons in the District of Columbia for the purpose of prostitution or any other immoral or lewd purpose. The penalties for any violation of this section shall be a fine of $300 for the first offense, a fine of $300 and 10 days imprisonment for the second offense, and a fine of $300 and 90 days imprisonment for each subsequent offense. Any person convicted of a violation of this section may be sentenced to community service as an alternative to, but not in addition to, any term of imprisonment authorized by this section.
(b) Inviting, enticing, persuading, or addressing for the purpose of inviting, enticing, or persuading, for the purpose of prostitution includes, but is not limited to, remaining or wandering about a public place and:
(1) Repeatedly beckoning to, stopping, attempting to stop, or attempting to engage passers-by in conversation for the purpose of prostitution;
(2) Stopping or attempting to stop motor vehicles for the purpose of prostitution; or
(3) Repeatedly interfering with the free passage of other persons for the purpose of prostitution.

The D.C. Council subsequently increased the penalties for § 22–2701 violations in a 1996 amendment as follows:

[A] fine of $500 and no less than one day but no more than 90 days imprisonment for the first offense, a fine of $750 and no less than one day but no more than 135 days imprisonment for the second offense, and a fine of $1,000 and no less than one day but no more than 180 days imprisonment for the third and each subsequent offense.

D.C.Code § 22–2701(a) (Supp.1998). An additional amendment was passed in July of 1998 to create the new offense of "Street solicitation for prostitution," committed when a person

[r]emains or wanders about in a public place and repeatedly beckons to, repeatedly stops, repeatedly attempts to stop, repeatedly attempts to engage passers-by in conversation, repeatedly stops or attempts to stop motor vehicles; or [r]epeatedly interferes with the

On October 11, 1995, the District commenced an *in rem* forfeiture action against the truck under D.C.Code § 22–2723(a).[4] Esparza promptly moved for summary judgment, arguing the forfeiture would violate the Double Jeopardy, Due Process,[5] and Excessive Fines Clauses of the Constitution. The trial court denied the motion, citing *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and entered a decree of condemnation from which Esparza now appeals. We hold, in light of the Supreme Court's subsequent decision in *Bajakajian*, that the forfeiture of Esparza's truck, under the circumstances presented in this case, is an unconstitutionally excessive fine.

## II.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Supreme Court has addressed the excessive fines provision on only a few occasions, and, in fact, applied it to strike down a fine for the first time very recently in *Bajakajian*. Emerging from this limited jurisprudence, however, are two fundamental principles which shape the analysis of the present case.

First, the limitation on excessive fines is meant to curb the "government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). Therefore, whether or not a government-initiated forfeiture of property is a "fine" for purposes of the Excessive Fines Clause depends not on its outward characterization as either civil or criminal, but rather on whether it is a form of punishment. *Id.* at 610, 113 S.Ct. 2801; *see also Bajakajian, supra*, — U.S. at ——, 118 S.Ct. at 2033 ("Forfeitures—payments in kind—are ... 'fines' if they constitute punishment for an offense."). If there is an element of punishment in the forfeiture, it comes within the purview of the Excessive Fines Clause notwithstanding the fact that it may also serve remedial purposes.[6] *See Bajakajian, supra*, — U.S. at

free passage of other persons for the purpose of prostitution, solicitation for prostitution, or pandering.

Metropolitan Police Department Civilianization and Street Solicitation for Prostitution Emergency Amendment Act, D.C. Act 12–428, —— D.C.Reg. ——, sec. 12, § 3a(a)(1), (2) (1998). The offense is punishable by ten to ninety days and/or a $300 fine for first and second offenses, and twelve to eighteen months and/or a $300 fine for third and subsequent offenses. *See id.* at § 3a(c). For those charged as third time (or subsequent) offenders, the statute provides that the "information or indictment ... shall state notice of the District of Columbia's intention to treat the charge as a felony." *Id.* at § 3a(d). Additionally, the statute specifically allows for the application of the forfeiture provisions of D.C.Code § 22–2723 for violations of the new offense. *Id.* at § 3a(e).

4. The text of the statute and its exceptions are quoted in part II(A), *infra*.

5. The due process challenge has been abandoned on appeal.

6. This contrasts with the treatment of *in rem* forfeitures under the Fifth Amendment, where it has been held that "civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause." *Ursery, supra*, 518 U.S. at 287, 116 S.Ct. 2135. The trial court's reliance on *Ursery* was misplaced. *Ursery* emphasized that the Excessive Fines Clause is not "parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment" and that the analysis of *Austin*, holding that civil forfeitures with at least some punitive motivations trigger the protection of the Eighth Amendment, should not be imported into double jeopardy jurisprudence. *Id.* at 286–87, 116 S.Ct. 2135. *Bajakajian* reasserts in unequivocal terms the continued authority of *Austin* with respect to the Excessive Fines Clause. *See Bajakajian, supra*, — U.S. at —— n. 4, —— n. 6, 118 S.Ct. at 2034 n. 4, 2035 n. 6. The *Ursery* Court did note that a "fine that serves purely remedial purposes cannot be considered excessive in any event," 518 U.S. at 287, 116 S.Ct. 2135 (quoting *Austin, supra*, 509 U.S. at 622 n. 14, 113 S.Ct. 2801) (internal quotation marks omitted), but this simply recognizes the necessary inquiry under *Austin* into whether the statute in question imposes some element of punishment.

·· It should also be noted that not all *in rem* forfeitures constitute "fines" under *Austin*. In fact, as the *Bajakajian* court pointed out, certain traditional *in rem* forfeitures fall "outside the domain of the Excessive Fines Clause" because

—— n. 4, —— n. 6, 118 S.Ct. at 2034 n. 4, 2035 n. 6; *Austin, supra,* 509 U.S. at 621–22, 113 S.Ct. 2801; *United States v. Halper,* 490 U.S. 435, 448, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). As the Supreme Court observed in *Halper,* "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." 490 U.S. at 448, 109 S.Ct. 1892.

■ The second controlling principle relates to the severity of a fine allowed by the Eighth Amendment. Once it is established that a forfeiture is a fine within the meaning of the Eighth Amendment, a gross disproportionality test must be applied to determine constitutional excessiveness, that is, "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian, supra,* —— U.S. at ——, 118 S.Ct. at 2036.

We turn now to an application of these principles to the forfeiture imposed in this case.

## A.

■ The Safe Streets Forfeiture Act, codified in the prostitution and pandering chapter of the D.C. criminal code, provides for the forfeiture of "[a]ll conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate a violation of this act"[7] and "[a]ll money, coins, and currency which has been used, or was intended for use, in violation of this act."[8] D.C.Code § 22–2723(a)(1), (2). There are, however, several limitations on the right of the District to effect a forfeiture:

(A) No conveyance used by any person as a common carrier in the course of transacting business as a common carrier is subject to forfeiture under this section unless it appears that the owner or other person in charge of the conveyance is a consenting party or privy to a violation of this act;

(B) No conveyance is subject to forfeiture under this section by reason of any act or omission that the owner establishes was committed or omitted without the owner's knowledge or consent;

(C) A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if the secured party neither had knowledge of nor consented to the act or omission; or

(D) Where the conveyance is not being driven by the owner of the conveyance, there is a presumption that the owner is without knowledge of the illegal act, and therefore the conveyance should not be forfeited.

D.C.Code § 22–2723. We have little difficulty concluding that the forfeiture of Esparza's pick-up truck pursuant to this section constitutes, at least in part, punishment for his

---

the action is thought to proceed against "guilty property" rather than against an offending owner and is thus nonpunitive. —— U.S. at —— ——, 118 S.Ct. at 2034–35. This fiction has been explained in the following manner: " 'The thing is here primarily considered as the offender, or rather the offence is attached primarily to the thing.... [T]he proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam.'* " *Id.* at ——, 118 S.Ct. at 2035 (quoting *The Palmyra,* 25 U.S. (12 Wheat.) 1, 14–15, 6 L.Ed. 531 (1827)). Notwithstanding this background, however, various modern *in rem* forfeitures will in fact implicate the Excessive Fines Clause:

> Because some recent federal forfeiture laws have blurred the traditional distinction between civil *in rem* and criminal *in personam* forfeiture, we have held that a modern statutory forfeiture is a 'fine' for Eighth Amendment purposes if it constitutes punishment even in

part, regardless of whether the proceeding is styled *in rem* or *in personam.*

*Id.* at —— n. 6, 118 S.Ct. at 2035 n. 6 (citing *Austin, supra,* 509 U.S. at 621–22, 113 S.Ct. 2801).

7. As noted by Commissioner Byrd in a companion case, the literal meaning of this language is somewhat "difficult to determine," especially the import of the phrase "to transport" and its lack of direct object. *United States v. Esparza,* 124 Daily Wash. L. Rptr. 1533, 1541 n. 12 (D.C.Super.Ct. Feb. 2, 1996). Whatever the effect of any textual ambiguity, Esparza does not dispute that the statute encompasses his conduct in soliciting a prostitute from his truck.

8. The "act" referred to is the Act for the Suppression of Prostitution in the District of Columbia, adopted in 1935, and codified at D.C.Code §§ 22–2701 and –2703. The Safe Streets Forfeiture Act was an amendment to the 1935 Act.

solicitation of the undercover officer and is therefore a "fine" subject to Eighth Amendment scrutiny.

The controlling case on this point is *Austin*,[9] where the Supreme Court ruled unanimously that the *in rem* civil forfeiture of conveyances and real property for violation of the federal drug laws constitutes a "fine" in the Eighth Amendment sense. The Court examined the history of *in rem* forfeiture statutes and demonstrated that at the time of the adoption of the Eighth Amendment such statutes were considered punitive, at least in part. The Court went on to survey several of its prior cases which, it observed, premised the law of civil forfeiture on two theories:

> that the property itself is 'guilty' of the offense, and that the owner may be held accountable for the wrongs of others to whom he entrusts his property. Both theories rest, at bottom, on the notion that the owner has been negligent in allowing his property to be misused and that he is properly punished for that negligence.

*Austin, supra,* 509 U.S. at 615, 113 S.Ct. 2801. *See also id.* at 624–25, 113 S.Ct. 2801 (Scalia, J., concurring) ("The theory of *in rem* forfeiture is said to be that the lawful property has committed an offense. However-

er the theory may be expressed, it seems to me that this taking of lawful property must be considered, in whole or in part, punitive.") (citations omitted).

Turning to the particular forfeiture statute at issue in *Austin*, 21 U.S.C. § 881(a)(4), (7) (1994),[10] the Court could find "nothing in these provisions or their legislative history to contradict the historical understanding of forfeiture as punishment." 509 U.S. at 619, 113 S.Ct. 2801. Three features of the statute contributed to this conclusion. First, it allowed for an "innocent owner" defense that served to "focus the provisions on the culpability of the owner in a way that makes them look more like punishment, not less." *Id.* According to the Court, the inclusion of the defense revealed a "congressional intent to punish only those involved in drug trafficking." *Id.* Second, the statute tied the forfeiture directly to the commission of drug offenses, providing that "a conveyance is forfeitable if it is used or intended for use to facilitate the transportation of controlled substances, their raw materials, or the equipment used to manufacture or distribute them." *Id.* at 620, 113 S.Ct. 2801. Finally, the legislative history of the statute evidenced congressional intent to deter and punish drug offenders.

---

9. The more recent excessive fines case, *Bajakajian*, utilized a slightly different analysis in this regard, as the statute in question there was quite clearly an *in personam* criminal statute. In *Bajakajian*, the government sought the forfeiture, under 18 U.S.C. § 982(a)(1) (1994), of lawfully possessed currency the defendant attempted to take out of the United States without making a disclosure to customs officials as required by law. The Court expressly characterized the forfeiture as an *in personam* criminal action, thus wholly punitive and a "fine" for Eighth Amendment purposes:

> The forfeiture in this case does not bear any of the hallmarks of traditional civil *in rem* forfeitures. The Government has not proceeded against the currency itself, but has instead sought and obtained a criminal conviction of respondent personally. The forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners.

*Bajakajian, supra,* ⸺ U.S. at ⸺, 118 S.Ct. at 2035. Unlike in *Bajakajian*, the statute at issue here provides for an *in rem* civil forfeiture, which will constitute a "fine" within the meaning of the Eighth Amendment if it inflicts punishment even

in part. *See id.* at ⸺ n. 6, 118 S.Ct. at 2035 n. 6; *Austin, supra,* 509 U.S. at 621–22, 113 S.Ct. 2801.

10. These provisions call for the forfeiture of:

> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances, their raw materials, and equipment used in their manufacture and distribution]
>
>    \*     \*     \*     \*     \*     \*
>
> (7) All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment. ...

In *Austin*, the government sought the forfeiture of a mobile home and auto body shop where police found small amounts of marijuana and cocaine, a .22 caliber revolver, drug paraphernalia, and about $4,700 in cash. The owner of the properties pled guilty to one count of possessing cocaine with intent to distribute, in violation of South Dakota law.

For much the same reasons the drug-forfeiture statute at issue in *Austin* was considered to have at least a partial punitive purpose, we conclude that the prostitution-forfeiture statute before us in this case has distinct punitive aspects. Here, as in *Austin*, the forfeiture provision contains an "innocent owner" defense such that common carriers, other full-title owners, and secured parties do not face forfeiture when it is established that they had no knowledge of, and did not provide consent to, the prostitution activity. Indeed, the statute creates a presumption that a conveyance operated by a person other than its owner is operated without the owner's knowledge "and therefore the conveyance should not be forfeited." D.C.Code § 22–2723(a)(1)(D).

Like the drug-forfeiture statute in *Austin*, § 22–2723 links forfeiture directly to a violation of law, using, in fact, virtually identical language to the federal drug-forfeiture provision: all conveyances "which are used, or intended for use, to transport, or in any manner to facilitate a violation of this act" are subject to forfeiture. D.C.Code § 22–2723(a)(1). Indeed, this unity of language is not coincidental; as the legislative history indicates, the Safe Streets Forfeiture Act "borrows the tactic of forfeiture from drug crimes and applies it to the area of prostitution. Like drug crimes, any person who uses his or her vehicle to violate the prostitution laws will forfeit the vehicle to the District." Council of the District of Columbia, Committee on the Judiciary, Report on Bill 9–260, Safe Streets Forfeiture Act of 1992, at 2–3 (April 15, 1992) (hereinafter "Judiciary Committee Report").

Finally, although the legislative history of § 22–2723 is perhaps less revealing than that of the federal statute construed in *Austin*, it is clear that deterrence, one hallmark of penal statutes, was a significant motivation behind the law. *Cf. Bajakajian, supra,* ——

U.S. at ——, 118 S.Ct. at 2034 (noting that "[d]eterrence ... has traditionally been viewed as a goal of punishment"). After lamenting the scope of the District's prostitution problem, the Council's Judiciary Committee commented on the ineffectiveness of a prior enactment which increased the monetary penalties levied against prostitutes and imposed a mandatory jail term for repeat offenders:

> It was believed that mandatory jail time would serve as a greater deterrent for career prostitutes and stop the revolving door for this crime. [The statute] did not have its intended effect. The Court continues to use a collateral or citation for prostitution offenses. As the collateral is only $50, it has no deterrent value.... [O]ther methods must be tried to bring prostitution under better control.

Judiciary Committee Report, *supra,* at 2. The committee then characterized the proposed legislation as a means to "attack the problem of prostitution from the demand side," borrowing "the tactic of forfeiture from drug crimes." *Id.* "Hopefully, this bill will have its intended effect on street prostitution in the District and allow our citizens, both commercial and residential, to enjoy and use the public space near their properties." *Id.* at 3.

We cannot agree with the District's argument that the Safe Streets Forfeiture Act has solely a remedial purpose. The District points to the Act's legislative history, which in its view "shows that the problem which the Council was addressing was the public nuisance associated with use of vehicles for soliciting for purposes of prostitution."[11] To be sure, the statute advances several remedial goals, namely, to reduce the traffic congestion and loud noise commonly associated with prostitution, to address the problem of falling property values in areas with a high inci-

---

11. The District cites language in the committee report regarding the problems associated with prostitution, including "loud boisterous groups of people during the early morning hours, traffic tie ups and accidents due to customers or 'johns' scouting available prostitutes, and harassment of female citizens by johns who believe they are prostitutes." Judiciary Committee Report, *supra,* at 2. The report also describes "the loss of tenants for new office buildings and the loss of conventions at the hotels as a result of long lines of prostitutes and their customers tying up traffic" and the fruitless efforts of the police "to control prostitution traffic, not allowing the 'johns' to constantly cruise an area and forcing them, through traffic patterns, to leave the area." *Id.*

dence of the activity, and generally to improve the quality of life for shopkeepers, residents, and visitors of these areas. The same legislative history, however, reveals the larger aim to "attack the problem of prostitution from the demand side" and "to bring prostitution under better control." Judiciary Committee Report, *supra*, at 2. Beyond attempting merely to control its collateral effects, the statute seeks to form part of the arsenal of steps aimed at the problem of prostitution itself. As the Judiciary Committee report explains, "[t]he District of Columbia continues to experience significant problems with [both] the crime and incidents of prostitution." *Id.*[12]

Of course, it is difficult to separate a crime from its collateral consequences. A measure designed to stamp out the crime directly will necessarily work also to reduce those consequences. In our view, though, the legislative history of the prostitution-forfeiture statute, coupled with the other factors detailed in *Austin*—that innocent owners are exempted from forfeiture and that the forfeiture is tied directly to the commission of a crime—compels the conclusion that the statute has at least some punitive aspect and, as such, comes within the protection of the Excessive Fines Clause. *See Bajakajian, supra*, —— U.S. at —— n. 4, —— n. 6, 118 S.Ct. at 2034 n. 4, 2035 n. 6 (observing that forfeiture is a "fine" for Eighth Amendment purposes if it constitutes punishment even in part); *Austin, supra*, 509 U.S. at 621–22, 113 S.Ct. 2801 (same).

### B.

Having established that the Excessive Fines Clause is implicated when a vehicle is forfeited under § 22–2723, we must now determine whether the taking of Esparza's truck, valued at $15,500, is in fact constitutionally excessive. Applying the proportionality test adopted by the Supreme Court in *Bajakajian*, we conclude that it is.

In *Bajakajian*, the defendant willfully attempted to remove $357,144 in currency from the United States without complying with the reporting requirement of 31 U.S.C. § 5316(a)(1)(A) (1994) for sums in excess of $10,000. The government seized the entire amount and instituted forfeiture proceedings under 18 U.S.C. § 982(a)(1), which instructs district courts, "in imposing sentence on a person convicted of an offense in violation of section ... 5316, ... [to] order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." The district court ordered a reduced forfeiture of $15,000, refusing to seize the entire sum on Eighth Amendment grounds. The government appealed to the Ninth Circuit, which examined the constitutional excessiveness of the full $357,144 forfeiture using a two-factor test: "The property forfeited must be an 'instrumentality' of the crime committed, and the value of the property must be proportional to the culpability of the owner." *Bajakajian, supra*, —— U.S. at ——, 118 S.Ct. at 2032 (citing 84 F.3d 334, 336 (1996)). The Ninth Circuit held that a forfeiture for currency reporting offenses could never withstand Eighth Amendment scrutiny, as currency is not an instrumentality of the crime of failure to report; the gravamen of the crime is the withholding of information, not the possession or transportation of the currency. *See id.* at ——, 118 S.Ct. at 2033.

The Supreme Court in *Bajakajian* rejected the two-part analysis applied by the Ninth Circuit, instead opting for a pure proportionality test to weigh the excessiveness of a fine under the Eighth Amendment. *See id.* at ——, 118 S.Ct. at 2036. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* The precise nature of this relationship was described as follows: "a punitive forfei-

---

**12.** Indeed, it could be argued that the statute's inclusion of forfeiture of "vessels" and "aircraft" manifestly indicates an intent to do more than simply abate the neighborhood nuisance of solicitation. Or this may simply reflect the adoption almost verbatim of the language of the federal drug-forfeiture statute. Nonetheless, the language does suggest the retributive aspect of the provision.

ture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.*

Applying its newly-adopted test,[13] the Court held that the forfeiture of the entire $357,144 would violate the Excessive Fines Clause. In judging the gravity of the offense, the Court placed its primary emphasis on the culpability of Bajakajian himself rather than on the severity of the crime in the abstract. The Court noted that the crime committed by Bajakajian was "solely a reporting offense." *Id.* at ——, 118 S.Ct. at 2038. Having been engaged in no other illegal activity, Bajakajian "does not fit into the class of persons for whom the statute was principally designed: He is not a money launderer, a drug trafficker, or a tax evader." *Id.* Moreover, for someone in Bajakajian's position, the Sentencing Guidelines authorized a maximum sentence of six months' incarceration and a maximum fine of $5,000, penalties which "confirm a minimal level of culpability." [14] *Id.* Additionally, the Court emphasized that the harm caused by Bajakajian's conduct was minimal in that it "affect-

ed only one party, the Government, and in a relatively minor way. There was no fraud on the United States, and respondent caused no loss to the public fisc." *Id.* at ——, 118 S.Ct. at 2039.

Based on these factors,[15] the Court concluded that full forfeiture would be grossly disproportional to the gravity of the offense: "It is larger than the $5,000 fine imposed by the District Court by many orders of magnitude, and it bears no articulable correlation to any injury suffered by the Government." *Id.*

■ Applying the proportionality test of *Bajakajian* to the present case, we conclude that the forfeiture of Esparza's truck must be deemed a constitutionally excessive fine. Solicitation for prostitution, particularly for a first conviction, has historically been treated as a minor crime in the District, and certainly was so treated at the time of Esparza's conduct. As a first time offender, Esparza was exposed to a maximum criminal fine of $300 and no incarceration; [16] he received no

---

13. Although the precise test articulated in *Bajakajian* has yet to be applied by any lower courts, similar formulations have been in use for some time in various jurisdictions around the country. *See, e.g., United States v. 829 Calle de Madero,* 100 F.3d 734, 738 (10th Cir.1996) (determining proportionality by comparing severity of offense with which property was involved, harshness of sanction imposed, and culpability of claimant); *United States v. One 1970 36.9' Columbia Sailing Boat,* 91 F.3d 1053, 1057 (8th Cir.1996) (determining proportionality by comparing extent of criminal wrongdoing, value of property forfeited, and length of time owner engaged in illegal activity); *United States v. 427 & 429 Hall St.,* 74 F.3d 1165, 1172 (11th Cir.1996) ("While the core of proportionality review is a comparison of the severity of the fine with the seriousness of the underlying offense, it would be futile to attempt a definitive checklist of relevant factors. The relevant factors will necessarily vary from case to case."); *United States v. 6380 Little Canyon Rd.,* 59 F.3d 974, 985–86 (9th Cir.1995) (determining proportionality by comparing harshness of forfeiture and culpability of owner; relevant factors include fair market value of property, subjective value, hardship to the claimant, whether claimant was directly involved in the illegal activity, and harm caused by claimant's conduct); *United States v. Milbrand,* 58 F.3d 841, 847–48 (2d Cir. 1995) (determining proportionality by comparing severity of offense with which property was in-

volved, harshness of sanction imposed, and culpability of claimant).

14. On this point, the majority rejected the dissent's argument that the full penalty authorized by Congress, a $250,000 fine and five years' incarceration, should be considered when weighing the gravity of the offense. The fact that Bajakajian received "but a fraction of the penalties authorized" reflected his minimal culpability relative to other potential violators of the reporting statute. *See Bajakajian, supra,* —— U.S. at ——–—— n. 14, 118 S.Ct. at 2038–39 n. 14.

15. The Court appears to have left open the prospect that other factors may be included in the proportionality analysis, such as the wealth of the owner of the property and the effect of the forfeiture on his or her livelihood. It had no occasion to consider such factors in the case before it because Bajakajian did not raise them and there were no relevant factual findings. *See Bajakajian, supra,* —— U.S. at —— n. 15, 118 S.Ct. at 2039 n. 15.

16. To be sure, one indicium of the gravity of a criminal offense is the maximum penalty authorized by the legislature. *Bajakajian,* however, does not even require that much. Rather, it suffices to consider the actual penalty range applicable to the particular defendant as a way to estimate his subjective culpability.

more than a $150 fine.[17] Thus, forfeiting a vehicle valued at $15,500 inflicts a penalty on Esparza on the order of fifty times the fine authorized by the Council and one hundred times the fine actually imposed. These ratios are comparable to the seventy-to-one figure considered grossly disproportional in *Bajakajian* and are also consistent with excessiveness determinations of other federal courts. *See, e.g., United States v. 18755 North Bay Rd.,* 13 F.3d 1493, 1498 & 1499 n. 6 (11th Cir.1994) (holding forfeiture of home used in illegal gambling operation excessive; 7.5–to–1 ratio between value of home and maximum fine authorized by statute and fifteen-to-one ratio between value of home and fine actually imposed); *United States v. One Parcel of Property at Shelly's Riverside Heights,* 851 F.Supp. 633, 638 (M.D.Pa.1994) (holding forfeiture of real property worth at least $7,950 for possession of 23 kilograms of marijuana excessive even where maximum authorized fine was $250,000); *United States v. 6625 Zumirez Drive,* 845 F.Supp. 725 (C.D.Cal.1994); *United States v. 835 Seventh St.,* 820 F.Supp. 688, 694 (N.D.N.Y.1993) (holding thirteen to one ratio grossly disproportionate under Cruel and Unusual Punishment Clause of Eighth Amendment). The District cites us to no case upholding a ratio on the order of that present here.

While Esparza, unlike Bajakajian, fits within the class of persons for whom the statute was principally designed, he can not be made to bear grossly disproportionate responsibility for the problem of prostitution in the District or for the attendant consequences of that crime such as traffic congestion, depressed property values, and reduced quality of life; he is, at bottom, one individual who on one occasion attempted to retain a prostitute. *See 6380 Little Canyon Rd., supra* note 13, 59 F.3d at 986 n. 13 (noting that in drug-forfeiture cases courts must not put "full responsibility for the war on drugs on the shoulders of every individual claimant") (quoting *United States v. 38 Whalers Cove Drive,* 954 F.2d 29, 37 (2d Cir.1992)) (internal quotation marks omitted). The forfeiture here imposes punishment on him which greatly outweighs his particular contribution to these multi-faceted problems. Moreover, the forfeiture of the pick-up truck cannot fairly be said to compensate the District for any loss associated with Esparza's crime, one justification commonly advanced for the *in rem* action. *See Bajakajian, supra,* —— U.S. at ——, 118 S.Ct. at 2034. And although no findings have been made on the impact on Esparza and his family of the forfeiture of the truck, the government does not dispute Esparza's assertions that the vehicle played a significant role in the maintenance of his livelihood. *Cf. Browning–Ferris, supra,* 492 U.S. at 271, 109 S.Ct. 2909 (tracing history of Excessive Fines Clause to Magna Carta and restrictions placed therein on "amercements," or payments to the Crown, so that payments could "not be so large as to deprive" one "of his livelihood").

By our decision today, we do not mean to underestimate the importance of the problem addressed by the Council in enacting the forfeiture provisions at issue in this case. Although historically deemed minor by the legislature in the criminal sense, the impact of prostitution upon the neighborhoods within which it is practiced is of great civic concern. There no doubt are serious public health and safety aspects to the problem, not to mention the nuisance to residential and business interests well-catalogued by the government in its briefs. There presumably are myriad ways to attempt to deal with these issues. We hold only, following the teachings of the Supreme Court, that the Constitution prevents the utilization of civil forfeiture as a penalty for the commission of an offense where the value of the property forfeited stands in gross disproportion to the gravity of the offense. Such a disproportion exists in the case at bar and the attempted forfeiture therefore violates the Excessive Fines Clause of the Eighth Amendment. Accordingly, the trial court's decree of forfeiture and condemnation of Esparza's vehicle must be

*Reversed.*

FARRELL, Associate Judge, concurring.

I join the court's opinion on the understanding that it reverses the forfeiture based

---

17. The D.C. Council has since raised the maximum penalty and created a new offense, reflecting a somewhat heightened vigilance in combating prostitution. See *supra* note 3.

upon a conviction (1) under the soliciting statute in existence at the time of appellant's conduct (as the court's footnote 3 points out, the D.C. Council has since increased the penalties considerably at least for repeated acts of soliciting) and (2) of a first offender for a single act of solicitation. *Cf. Austin v. United States,* 509 U.S. 602, 627–28, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (Scalia, J., concurring in part and concurring in the judgment) (forfeiture of a building, for example, "in which an isolated drug sale happens to occur" would be an excessive fine); *United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994) (one factor in analysis is whether illegal use of the instrumentality "was an isolated event or had been repeated"). At the same time, I am uneasy about the exclusive or near-exclusive focus apparently required by *Bajakajian* on proportionality be-

tween the value of appellant's truck and the maximum fine he received or could have received. In theory that could mean that "Johns" who enter the District to solicit prostitution from new and/61or more expensive conveyances stand a better chance of keeping the instrumentality than do those of lesser means.* A practical response to our decision today would seem to be for the Council to consider a substantially augmented criminal fine, backed up by a lien, for the aggravating circumstance of use of any motor vehicle in the act of soliciting.

* The manner in which some courts do "rough justice" by discounting the value of the vehicle by the probable effect its loss will have on the particular owner's livelihood hardly seems an im-

provement. We are thus left with appellant's unsupported suggestion on brief that the District does not bother to forfeit less valuable vehicles anyway.