I respectfully dissent. I believe the Court of Civil Appeals reached the correct result in this case, and I would affirm.
The majority relies on United States v. Bajakajian,524 U.S. 321, 118 S.Ct. 2028 (1998), to support its conclusion that the judgment of the Court of Civil Appeals must be reversed. I believe that Bajakajian is distinguishable, because the underlying crime in that case and the crime in this case are quite different. In Bajakajian, the defendant was guilty only of a failure to report the movement of funds from the United States to another country. The United States Supreme Court wrote:
 "Respondent's crime was solely a reporting offense. It was permissible to transport the currency out of the country so long as he reported it. Section 982(a)(1) [of 18 U.S.C.] orders currency to be forfeited for a `willful' violation of the reporting requirement. Thus, the essence of respondent's crime is a willful failure to report the removal of currency from the United States. Furthermore, as the District Court found, respondent's violation was unrelated to any other illegal activities. The money was the proceeds of legal activity and was to be used to repay a lawful debt. Whatever his other vices, respondent does not fit into the class of persons for whom the statute was principally designed: He is not a money launderer, a drug trafficker, or a tax evader."
Bajakajian, 524 U.S. at 337-38, 118 S.Ct. at 2038. In contrast toBajakajian, this case involves serious criminal activity in that Kelley was convicted of possession of a controlled substance.
Bajakajian is also distinguishable because, as the Supreme Court held:
 "The forfeiture in this case [Bajakajian] does not bear any of the hallmarks of traditional civil in rem forfeitures. The Government has not proceeded against the currency itself, but has instead sought and obtained a criminal conviction of the respondent personally. The forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners. Section 982(a)(1) thus descends not from historic in rem forfeitures of guilty property, but from a different historical tradition: that of in personam, criminal forfeitures. Such forfeitures have historically been treated as punitive, being part of the punishment imposed for felonies and treason in the Middle Ages and at common law."
Bajakajian, 524 U.S. at 331-32, 118 S.Ct. at 2035. In contrast, as the State points out in its brief, "Kelley's case was an in rem civil forfeiture, pursuant to a civil statute, against the vehicle used by Kelley to possess" controlled substances. Brief of the State of Alabama at 19.
On the issue of proportionality, used by the majority to reverse, see Bennis v. Michigan, 516 U.S. 442 (1996), reh'g denied, 517 U.S. 1163 (1996), in which the United States Supreme Court affirmed the forfeiture of an automobile in a case where a husband used the automobile for solicitation, and his wife, who had an ownership interest in the automobile, had no knowledge of his activities. The Supreme Court affirmed the forfeiture of the automobile in Bennis even though the forfeiture deprived the wife of her property interest in the automobile. Although I realize that other courts have reached decisions similar to that which the majority reaches today,[2] I believe the *Page 842 
United States Supreme Court's stated standards do not require the reversal of the forfeiture in this case.
Brown, J., concurs.
[2] See, e.g., One 1995 Toyota Pick-Up Truck v. District ofColumbia, 718 A.2d 558 (D.C. 1998), in which the Court of Appeals of the District of Columbia reversed the forfeiture of an automobile used for solicitation.