05-2969-cv
von Hofe v. United States

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: March 13, 2007                    Decided: June 27, 2007)

Docket No. 05-2969-cv

_____

HAROLD E. VON HOFE, KATHLEEN M. VON HOFE

*Claimant-Appellants,*

PROPERTY, PARCEL OF, 32 MEDLEY LANE, BRANFORD, CT

*Defendant,*

−v.−

UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

_____

Before:

 MCLAUGHLIN, WESLEY, *Circuit Judges*, SESSIONS, *District Judge.*[*]

 Appeal from the May 31, 2005, judgment of the United States District Court for the District of Connecticut (Kravitz, *J.*), ordering forfeiture of the claimants' residence to the United States over their argument that the forfeiture violated the Excessive Fines Clause of the Eighth

_____

[*]The Honorable William K. Sessions, III, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

Amendment to the Constitution.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

———————

JONATHAN EINHORN, New Haven, Connecticut, *for Claimant-Appellants*.

DAVID X. SULLIVAN, Assistant United States Attorney *on behalf of* Kevin J. O'Connor, United States Attorney for the District of Connecticut (Sandra S. Glover, Assistant United States Attorney for the District of Connecticut, on the brief), *for Plaintiff-Appellee*.

———————

WESLEY, *Circuit Judge*:

Claimants Harold and Kathleen von Hofe appeal from a civil judgment ordering the forfeiture of their home, 32 Medley Lane. They contend the forfeiture violates the Excessive Fines Clause of the Eighth Amendment, which "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (internal citation and quotation marks omitted). We affirm the forfeiture of Mr. von Hofe's interest in 32 Medley Lane, but vacate the forfeiture of Mrs. von Hofe's interest. Because the extent of the forfeiture bears no correlation either with Mrs. von Hofe's minimal culpability or any harm she purportedly caused, the Excessive Fines Clause precludes forfeiture of her entire one-half interest in 32 Medley Lane.

## I. Background

The property at issue, with an undisputed value of $248,000, consists of a ranch house located on a small wooded lot in Branford, Connecticut. The von Hofes have called 32 Medley Lane their home since 1979 and reside there with their two sons. They enjoy joint ownership of

the property, unencumbered by any mortgage.

The Branford Police Department, acting on a tip from a confidential informant, began investigating the possible cultivation of marijuana at 32 Medley Lane in November 2000. Rooting through the von Hofes' trash for ten months produced no incriminating evidence, but subpoenaed electrical records indicated that 32 Medley Lane consumed more than twice as much electricity as nearby residences of similar size and square footage. Officers from the Branford Police Department, with the assistance of the Drug Enforcement Administration ("DEA"), executed a search warrant at 32 Medley Lane in December 2001. Sixty-five marijuana plants, a small postage scale with marijuana residue on its pan, a jar partially filled with marijuana buds, several glass marijuana pipes, and other items commonly associated with the indoor cultivation of marijuana, were discovered in the basement of the house. Neither large amounts of cash, glassine bags, nor firearms — indicia of the drug trade — were found.

The State of Connecticut brought a variety of criminal charges against Harold and Kathleen von Hofe. Mr. von Hofe ultimately entered an *Alford* plea[1] under Conn. Gen. Stat. § 21a-277(b), to the "manufacture[], distribut[ion] . . . [of] any controlled substance," and received a three-year suspended sentence and a conditional discharge. Mrs. von Hofe entered an *Alford* plea under Conn. Gen. Stat. § 21a-279(c), to possession of "any quantity of any controlled substance," and received a nine-month sentence, execution suspended, and a conditional discharge. No fine was imposed on either of the von Hofes.

---

[1]Arising out of *North Carolina v. Alford*, 400 U.S. 25 (1970), an *Alford* plea allows a defendant to enter a plea containing protestations of innocence while "voluntarily, knowingly, and understandingly consent[ing] to the imposition of a prison sentence," *id.* at 37.

## II. The Civil *In Rem* Forfeiture Action

Choosing not to indict and prosecute the von Hofes personally, the federal government instead instituted a civil *in rem* forfeiture action against 32 Medley Lane two days after the search. The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, § 511, 84 Stat. 1276, permits forfeiture of "[a]ll real property . . . which is used . . . to commit, or to facilitate the commission of, a violation of the [Controlled Substances Act] punishable by more than one year's imprisonment." 21 U.S.C. § 881(a)(7). Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). To carry its burden of proving the property facilitated a violation of a narcotics offense punishable by more than one year in prison, the government must "establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(2). To prevent forfeiture, a claimant may either rebut the government's proof of a substantial connection or raise an innocent owner defense under CAFRA. An innocent owner is a claimant who "did not know of the conduct giving rise to forfeiture; or upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). CAFRA requires a claimant to prove by a preponderance of the evidence that he or she is an innocent owner. *Id.* § 983(d)(1).

At trial, the government alleged a substantial connection between 32 Medley Lane and violations of 21 U.S.C. § 841(a), which prohibits the manufacture, distribution, or possession

with intent to distribute marijuana, and 21 U.S.C. § 846, which prohibits a conspiracy to commit a violation of 21 U.S.C. § 841(a). Mrs. von Hofe — but not her husband — raised an innocent owner defense under CAFRA, claiming she "did not know of the conduct giving rise to forfeiture." *Id.* § 983(d)(2)(A)(i). Mrs. von Hofe made no claim that she, "upon learning of the conduct giving rising to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." *Id.* § 983(d)(2)(A)(ii).

The "substantial connection" and "innocent owner" issues were presented to a jury. The government's evidence in favor of forfeiture fell into three categories: (1) testimony from law enforcement officials present during execution of the search warrant; (2) a videotape recorded during execution of the search warrant; and (3) testimony from Anthony Honeykutt, then incarcerated for possession of prescription medication not in its original container, to recount how he traded ketamine for marijuana and purchased a half-ounce of marijuana for $200 at the von Hofe residence from one of the von Hofe sons. Mrs. von Hofe testified in defense of the property; her husband did not.

Testimony from officials from the Branford Police Department and the DEA began with the location and extent of the marijuana cultivation occurring at 32 Medley Lane. Finding no marijuana plants on the first floor of the von Hofe residence, law enforcement officials discovered sixty-five marijuana plants in two small compartments of one of four rooms in the basement. In one compartment containing the house's oil tank, about thirty marijuana plants were potted in a three-by-five foot area. The remaining marijuana plants were in another compartment, which housed the hot-water heater. Large curtains closed off both compartments

from the remainder of the room.

Law enforcement officials further testified to incriminating statements made by the von Hofes during execution of the search warrant. A Branford Police Department detective testified that he sat with Mrs. von Hofe at her kitchen table, where she admitted her husband's ownership of the marijuana plants but claimed she was not involved in the marijuana cultivation. A DEA agent testified that Mr. von Hofe admitted to owning the marijuana plants, to making marijuana available to his son and friends who smoked marijuana in the basement with him, and to bartering marijuana for household repairs. The DEA agent acknowledged that Mr. von Hofe corroborated his wife's lack of involvement in the marijuana cultivation.

During the forfeiture proceeding, Kathleen von Hofe testified to her lack of involvement and insisted that she had no knowledge of the sixty-five marijuana . Even though the marijuana plants were growing in two compartments of a room down the corridor from her bedroom, Mrs. von Hofe insisted she could not smell the marijuana plants over the incense her husband burned in his study. She further claimed to have no reason to go into the compartments containing the marijuana plants, testifying that the oil man only entered the room when he needed to refill the oil tank. Mrs. von Hofe further insisted that she was busy and had no time to monitor her husband. Unlike Mr. von Hofe, whose job afforded him plenty of free time, Mrs. von Hofe was the principal breadwinner for the family and worked more than seventy hours a week as a nurse for the Yale-New Haven Hospital. She told the jury that she only pleaded guilty to misdemeanor possession of marijuana to save her two sons; local authorities had threatened to press charges against her sons if she did not enter a plea. The government chose not to rebut Mrs. von Hofe's

lack of involvement, pressing instead her knowledge of the marijuana in the basement.

The jury took less than an hour to find a substantial connection between 32 Medley Lane and a violation of the federal narcotics laws punishable by more than one year in prison and to reject Kathleen von Hofe's innocent owner defense. Fearing the loss of their home, the von Hofes submitted a $248,000 offer of judgment, under Fed. R. Civ. P. 68, in lieu of forfeiture. The government rejected their offer.

The district court then conducted an evidentiary hearing to determine whether forfeiture of 32 Medley Lane would violate the Excessive Fines Clause of the Eighth Amendment. Harold von Hofe testified on his wife's behalf. He defended his wife's lack of involvement, claiming she could not have known about the marijuana as he never discussed the matter with her. Mr. von Hofe further testified that he did his best to hide the marijuana from her, only tending to the marijuana plants when she was not home. Disputing the testimony of Anthony Honeykutt and the DEA agents from the forfeiture proceeding, Mr. von Hofe denied ever selling or bartering marijuana. Mr. von Hofe also testified that the DEA agents broached the subject of bartering and selling marijuana, and that he merely responded to their inquiry by stating that he shared marijuana with friends who provided favors in return. Mr. von Hofe ended his testimony with a detailed explanation of the marijuana cultivation, discussing how he intentionally kept the plants small and how he only occasionally removed marijuana buds from the plants, which allowed him to cultivate a few ounces of useable marijuana every few weeks for personal consumption. Following the evidentiary hearing, the district court issued a thoughtful and comprehensive opinion upholding forfeiture of 32 Medley Lane under the Excessive Fines Clause of the Eighth

Amendment. *See United States v.32 Medley Lane*, 372 F. Supp. 2d. 248 (D. Conn. 2005). This appeal followed.

### III. The Eighth Amendment

The Eighth Amendment checks the government's power to punish: "Excessive bail shall not be required; nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Claiming a violation of the Excessive Fines Clause, the von Hofes challenge the government's forfeiture of 32 Medley Lane. We review the issue of excessiveness *de novo*, bound by the district court's factual findings unless clearly erroneous. *United States v. Bajakajian*, 524 U.S. 321, 336 & n.10 (1998).

A fine refers to "a payment to a sovereign as punishment for some offense." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). The form of the fine is irrelevant and may be a payment in kind, *i.e.*, a forfeiture, or a payment in cash. Not all forfeitures, however, are fines subject to the Excessive Fines Clause. Some forfeitures are remedial, compensating the government for lost revenues. *See One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 237 (1972) (per curiam). Only if the forfeiture may be characterized, at least in part, as punitive will it be considered a fine for purposes of the Excessive Fines Clause. *See Austin*, 509 U.S. at 621-22.

The Supreme Court in *Austin* held that forfeitures of real property pursuant to 21 U.S.C. § 881(a)(7) are fines. *Id.* at 621. Section 881(a)(7) forfeitures deter and punish property owners who allow their property to facilitate a drug-related crime and therefore fall within the scope of the Excessive Fines Clause. *Id.* at 618-21. Accordingly, there is no question that the forfeiture

of 32 Medley Lane, brought under 21 U.S.C. § 881(a)(7), is a fine. The only issue is whether forfeiture of the von Hofe home is constitutionally excessive.

While holding the Excessive Fines Clause applicable to § 881(a)(7) forfeitures, the Supreme Court in *Austin* withheld formulation of a test to determine excessiveness: "Prudence dictates that we allow the lower courts to consider that question in the first instance." *Id.* at 622-23. We took up that task in *United States v. Milbrand*, 58 F.3d 841 (2d Cir. 1995). Even though the claimant in *Milbrand* knew of her son's previous conviction for cultivating marijuana in her home, she allowed him to convey to her an 85-acre parcel of farmland where he proceeded to cultivate 1,362 marijuana plants. *Id.* at 843. Police executed a search warrant at the property, finding the plants, an electronic seed separator, a loaded gun, and numerous containers of marijuana sorted by year, size, and quality. *Id.* To decide whether the forfeiture would be excessive if levied against the mother, we announced a multi-factor test:

> [T]he factors to be considered by a court in determining whether a proposed *in rem* forfeiture violates the Excessive Fines Clause should include (1) the harshness of the forfeiture (*e.g.*, the nature and value of the property and the effect of forfeiture on innocent third parties) in comparison to (a) the gravity of the offense, and (b) the sentence that could be imposed on the perpetrator of such an offense; (2) the relationship between the property and the offense, including whether use of the property in the offense was (a) important to the success of the illegal activity, (b) deliberate and planned or merely incidental and fortuitous, and (c) temporally or spatially extensive; and (3) the role and degree of culpability of the owner of the property.

*Id.* at 847-48. The first factor reflects the proportionality of the forfeiture to the claimant's culpability, the second the extent to which the property was an instrumentality of the criminal activity, and the third the culpability of the claimant.

Applying these factors in *Milbrand*, we began by observing that 1,362 plants would allow

imposition of a $4 million fine under the federal Sentencing Guidelines, more than sixty times greater than the value of the property. *Id.* at 848. Likewise, the relationship between the property and the marijuana was more than fortuitous. Milbrand's son used large portions of the farmland to grow and store marijuana. *Id.* That Milbrand had neither been convicted nor prosecuted did not require a finding that she enjoyed minimal culpability, as she had extensive knowledge of the marijuana cultivation. *Id.* Milbrand made frequent visits to the land she nominally owned, knew her son had a prior arrest for growing marijuana, and cleaned cabinets and drawers in a building on the property where police later found marijuana. *Id.* On balance, we held the forfeiture of her interest in the farmland fell comfortably within limits of the Excessive Fines Clause. *Id.*

Three years later, the Supreme Court revisited the law of forfeitures in *Bajakajian* to identify relevant considerations when deciding the excessiveness of an *in personam* forfeiture. 524 U.S. at 334-37. The defendant in *Bajakajian* attempted to remove $357,144 from the United States to the Republic of Cyprus without reporting the sum to the federal government. *Id.* at 325. During the forfeiture proceeding, the government presented no evidence to suggest either that Bajakajian obtained the funds through illicit activity or that he was removing the funds for an inappropriate purpose. The government nonetheless contended forfeiture of the entire $357,144 was appropriate punishment for his reporting offense. The Supreme Court disagreed. *Id.* at 337. Borrowing the principle of gross disproportionality from its Cruel and Unusual Punishment jurisprudence, the Supreme Court held the forfeiture of $357,144 to be an excessive fine. *Id.* at 337-38. The Court's holding was based largely on the following findings: (1) Bajakajian's

offense was unrelated to any other illegal activity; (2) he did not fit within the class of persons for whom the reporting statute was primarily designed; (3) the federal Sentencing Guidelines set a maximum fine of $5,000 for his offense; and (4) any harm caused by his failure to report his transport of currency was minimal and only befell the government. *Id.*

Congress enacted CAFRA almost two years after *Bajakajian* to establish a procedural framework to determine the excessiveness of an *in rem* forfeiture. The statute places the burden on a claimant to "petition the court to determine whether the forfeiture was constitutionally excessive." 18 U.S.C. § 983(g)(1). "In making this determination, the court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture." *Id.* § 983(g)(2). The claimants bear the burden of "establishing that the forfeiture is grossly disproportional by a preponderance of the evidence." *Id.* § 983(g)(3). If the forfeiture is grossly disproportional, the court should "reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution." *Id.* § 983(g)(4).

The confluence of *Bajakajian* and CAFRA and the ensuing dearth of relevant case law from our court vexed the district court. The district court acknowledged that our decision in *Milbrand* held the principles of proportionality and instrumentality relevant to the excessiveness inquiry, but thought the ensuing statute and High Court decision had changed matters. The district court observed that "[t]he Second Circuit has not yet had occasion in a post-CAFRA case to set forth the factors that a district court should consider in deciding constitutional excessiveness." *32 Medley Lane*, 372 F. Supp. 2d at 259. Doing its best to decide what change, if any, had been done to the holding in *Milbrand*, the district court ultimately concluded that,

"[a]fter *Bajakajian*, and particularly after enactment of CAFRA, the instrumentality factors of *Milbrand* have, in large measure, been removed from the excessiveness analysis." *Id.*

We disagree. Neither *Bajakajian* nor CAFRA renders irrelevant the property's role in the offense when the excessiveness of an *in rem* forfeiture is at issue.[2] *Bajakajian* involved an *in personam* forfeiture. 524 U.S. at 333-34. But the Supreme Court seemed to declare in sweeping language that punitive forfeitures — regardless of whether they proceed *in rem* or *in personam* — are excessive if they are "grossly disproportional to the gravity of a defendant's offense." *Id.* at 334. In light of *Bajakajian* and our earlier decision in *Milbrand*, we have no trouble concluding that we must determine whether the present *in rem* forfeiture is grossly disproportional to the offenses committed at the property. However, because the criminal *in personam* forfeiture in *Bajakajian* and the present civil *in rem* forfeiture differ in two material respects, we find no reason to conclude *Bajakajian* removed consideration of the property's role in the offense from our excessiveness inquiry.

First, the extent of the property's involvement was irrelevant to the forfeiture in *Bajakajian*. As the Supreme Court noted, "[c]ash in a suitcase does not facilitate the commission of [a reporting] crime as, for example, an automobile facilitates the transportation of goods concealed to avoid taxes." *Id.* at 334 n.9 (citing *J.W. Goldsmith, Jr.-Grant Co. v. United States*,

---

[2]The district court also appears to have been under the mistaken impression that our template for evaluating excessiveness developed in *Milbrand* was eclipsed by *United States v. Collado*, 348 F.3d 323 (2d Cir. 2003). *See 32 Medley Lane*, 372 F. Supp. 2d at 259-60. That *Collado* only cited *Bajakajian* is true. But our excessiveness analysis in *Collado* was necessarily perfunctory; the forfeiture in that case fell comfortably within the confines of the Excessive Fines Clause.

254 U.S. 505, 508 (1921)). The cash, while a precondition to the reporting offense, was not the means by which defendant committed the offense. A civil *in rem* forfeiture, in contrast, proceeds against the property itself under the legal fiction that "the thing is primarily the offender." *J.W. Goldsmith, Jr.-Grant Co.*, 254 U.S. at 511. The law "ascrib[es] to the property a certain personality, a power of complicity and guilt in the wrong." *Id.* at 510. Pure contraband — child pornography, counterfeit currency, and unregistered hand grenades, for instance — are objects, "the possession of which, without more, constitutes a crime." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699 (1965). Like imprisonment, which incapacitates convicted criminals, forfeiture may be said to incapacitate contraband. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364 (1984).

The law's vilification of property does not stop with contraband, but extends to so-called "instrumentalities" or tools used in the commission of a criminal offense. This theory of forfeiture has allowed the confiscation of a ship engaged in piracy, *see The Palmyra*, 25 U.S. 1 (1827), fishing nets used to violate state fishing laws, *see C.J. Hendry Co. v. Moore*, 318 U.S. 133 (1943), an automobile used to transport distilled spirits, *see J.W. Goldsmith, Jr.-Grant Co.*, 254 U.S. at 505, and a parcel of real property used to facilitate violations of the federal narcotics laws, *see Austin*, 509 U.S. at 602. The guilt of such property is not so readily apparent as that of pure contraband; mere possession or ownership of a parcel of real property, a shipping vessel, a fishing net, or an automobile is not inherently criminal. To gauge the property's guilt, then, one needs to examine the relationship between the property and the criminal offense. The property may relate to a necessary element of an offense, as might a vehicle used for smuggling or a ship

for piracy. In other cases, the relationship between the property and the offense may be more attenuated. The location of a drug sale, for instance, may be more a function of happenstance than reason. The extent of the relationship between the property and the offense thus enjoys appreciable relevance in our excessiveness inquiry. The greater the property's involvement in the offense — both in terms of its temporal and spatial reach and the other uses to which the property was being put — the stronger the argument that the forfeiture is not excessive.

The notion that the property plays a role in violating the law dovetails with the second distinction between a civil *in rem* forfeiture and a criminal *in personam* forfeiture: the relevance of a claimant's culpability. The culpability of the defendant in *Bajakajian* had been established prior to forfeiture when he pleaded guilty to the reporting offense. In fact, only after criminal conviction may an *in personam* forfeiture occur. *See Bajakajian*, 524 U.S. at 328 ("The forfeiture is thus imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony, and it cannot be imposed upon an innocent owner of unreported currency, but only upon a person who has himself been convicted of a . . . reporting violation." (internal citation omitted)). Neither conviction nor even the commencement of criminal proceedings is a necessary precondition to an *in rem* forfeiture. "[T]he proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam*."[3] *The Palmyra*, 25 U.S at 9.

---

[3]Because an *in personam* forfeiture occurs only after criminal conviction, the defendant who must forfeit property has enjoyed the protection of a panoply of constitutional safeguards. Whether and to what extent these safeguards apply in civil *in rem* forfeitures is debatable. *Compare United States v. Usery*, 518 U.S. 267 (1996) *with Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767 (1994). We need not decide, because the claimants have not argued, whether the difference in the procedural protections afforded in the two proceedings should bear on the excessiveness question.

-14-

Nonetheless, the culpability of a claimant is relevant to our excessiveness determination. The government seeks to punish a claimant through forfeiture for criminal conduct he or she let transpire on the property. *See Austin*, 509 U.S. at 622; *Milbrand*, 58 F.3d at 847; *cf. One 1958 Plymouth Sedan*, 380 U.S. at 700 (A "forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law."). Building on the instrumentality principle discussed previously, the extent of the property's involvement in the offenses may prove relevant when evaluating a claimant's culpability. The extent to which a property owner allowed or put the property to its criminal use may be indicative of his or her culpability.

We similarly find no reason to conclude that CAFRA renders irrelevant the instrumentality factor in *Milbrand*. Before Congress enacted CAFRA, several sister courts engaged in a two-step excessiveness inquiry. Their excessiveness analysis initially put the burden on the government to prove a substantial connection between the property and the offense. If the government carried its burden, then the burden shifted to the claimants to establish the grossly disproportional nature of the forfeiture. *See United States v. 829 Calle de Madero*, 100 F.3d 734, 738 (10th Cir. 1996); *United States v. 6380 Little Canyon Rd.*, 59 F.3d 974, 985 (9th Cir. 1995). CAFRA now requires, as part of the government's case-in-chief, that it prove to the jury "that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Perhaps this aspect of CAFRA dispenses with the first prong of the excessiveness inquiry for these courts. *See United States v. 45 Claremont St.*, 395 F.3d 1, 5 n.5 (1st Cir. 2004) ("After CAFRA . . . once the government has met its burden [under 18 U.S.C. §

983(c)(3)], the instrumentality test is satisfied."). But we have never adopted a bifurcated excessiveness inquiry. We have always viewed the property's role in the offense as one of several relevant factors in deciding excessiveness, not a hurdle to overcome en route to the proportionality inquiry. *See Milbrand*, 58 F.3d at 847-48. Establishing a substantial connection between the criminal offense and the property guards against an arbitrary taking of private property; but it does not preclude further inquiry into the role the property played in the offense asserted. This is particularly true where the interests of multiple claimants are at issue. Their varying degrees of control and use of the property and their relative involvement in the criminal conduct might put different aspects of the property's involvement at issue in determining whether forfeiture of each claimant's interest is excessive.

We thus frame our excessiveness inquiry in terms of the following considerations: (1) the harshness, or gross disproportionality, of the forfeiture in comparison to the gravity of the offense, giving due regard to (a) the offense committed and its relation to other criminal activity, (b) whether the claimant falls within the class of persons for whom the statute was designed, (c) the punishments available, and (d) the harm caused by the claimant's conduct; (2) the nexus between the property and the criminal offenses, including the deliberate nature of the use and the temporal and spatial extent of the use; and (3) the culpability of each claimant. *See Bajakajian*, 524 U.S. at 337-40; *Collado*, 348 F.3d at 328; *Milbrand*, 58 F.3d at 847-48. Determining the excessiveness of a civil *in rem* forfeiture is necessarily fact-intensive and the "quantum, in particular, of pecuniary fines neither can, nor ought to be, ascertained by any invariable law." William Blackstone, 4 Commentaries *371. Given the impossibility of establishing a formula

for an excessive fine with surgical precision, this framework provides a useful template for the fact-finding process and the ultimate excessiveness inquiry.

### A. Harold von Hofe's Interest in 32 Medley Lane

We agree with the district court that forfeiture of Harold von Hofe's one-half interest in 32 Medley Lane does not violate the Excessive Fines Clause. *See 32 Medley Lane*, 372 F. Supp. 2d at 266. He confessed to growing sixty-five marijuana plants in his basement for about a year, to smoking marijuana since the 1960s, and to sharing marijuana with his son and neighbors. *Id.* at 260. He also appears to have bartered marijuana for landscaping and roofing services with his neighbors and traded marijuana for ketamine on occasion. *Id.* Even though Mr. von Hofe's criminal activity involved neither violence nor threats of violence, he manufactured an illicit substance, which he contributed to the local market, thereby perpetuating the product's availability for himself, his neighbors and his son. His actions and their resulting harm, perhaps difficult to quantify in objective terms, undoubtedly frustrate society's desire to stem the use of illicit substances and the market therefor.

Although the government concedes Harold von Hofe's sixty-five marijuana plants do not rise to the level of a major marijuana cultivation operation, *see 32 Medley Lane*, 372 F. Supp. 2d at 261 & n.10, both parties acknowledge the seriousness of manufacturing and distributing a controlled substance. Congress has authorized significant penalties for such conduct; growing between fifty and one hundred marijuana plants carries a statutory maximum of a $1 million fine and twenty years imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). Connecticut law similarly provides significant penalties, up to a $25,000 fine and seven years imprisonment, for the

manufacture of a controlled substance. *See* Conn. Gen. Stat. § 21a-277(b). That the terms of Mr. von Hofe's state conviction did not include a fine was fortunate for him, but does not alter our analysis. The range of possible punishments aid our analysis of the forfeiture's proportionality and the seriousness of the offenses pursued by Mr. von Hofe at 32 Medley Lane.

As the district court acknowledged, our inquiry does not begin and end with the maximum penalties authorized by statute, but also includes consideration of the federal Sentencing Guidelines. *See 32 Medley Lane*, 372 F. Supp. 2d at 265. The statutory maximum, designed as an outer limit on the punishment available, does not necessarily reflect an individual offender's culpability or the gravity of the actual offense giving rise to forfeiture. Providing ranges of punishment with greater particularity, the Guidelines allow us to better determine proportionality and to evaluate a claimant's culpability relative to other potential violators of the federal narcotics laws. Acknowledging the relevance of the Guidelines, however, does not mean we will engage in speculation as to the availability of sentencing adjustments and downward departures as if the claimant had been prosecuted and convicted in federal court. Conjecture of this sort would only impede the ultimate goal of determining whether the forfeiture is *grossly* disproportional to the claimant's offense. *See United States v. 38 Whalers Cove Drive*, 954 F.2d 29, 39 (2d Cir. 1992).

The manufacture of sixty-five marijuana plants may result in fifteen to twenty months imprisonment and a fine ranging from $4,000 to $40,000 under the Guidelines. *See* U.S. Sentencing Guidelines Manual § 5E1.2(c)(3). Because the statutory maximum exceeds $250,000, the Guidelines authorize imposition of a fine up to the statutory maximum, which is

-18-

$1 million in this case. *See id.* § 5E1.2(c)(4). The commentary to the Guidelines, which carries "controlling weight," *Stinson v. United States*, 508 U.S. 36, 45 (1993) (internal citation and quotation marks omitted), indicates that the maximum fine — either $40,000 or $1 million — should reflect "at least twice the amount of gain or loss resulting from the offense." U.S. Sentencing Guidelines Manual § 5E1.2, cmt. n.4. In past forfeiture cases, the government has easily established sufficient proof of profit. *See generally Collado*, 348 F.3d at 327 (involving over 646 narcotics-related conversations and $20 million worth of narcotics transactions over the span of a year); *38 Whalers Cove*, 954 F.2d at 32 (involving two cocaine sales in the amount of $250). But calculating the gain in this case is impossible, for the government chose not to introduce evidence that indicates either the value of the marijuana obtained at 32 Medley Lane or the profit inuring to Mr. von Hofe from his marijuana grow. The government's evidence at trial only established that Mr. von Hofe bartered marijuana for odd jobs around his house, that he sold marijuana on at least two occasions, and that Anthony Honeykutt would "usually buy a half an ounce, which is $200," at 32 Medley Lane. And as the district court acknowledged, "Mr. von Hofe's economic gains do not appear to have been very substantial." *32 Medley Lane*, 372 F. Supp. 2d at 261. Were the only argument in favor of forfeiture the maximum available punishments, we might find this lack of evidence troublesome. Despite this evidentiary shortcoming, we can confidently conclude on the record before us that forfeiture of Mr. von Hofe's interest is not an excessive fine.

Although forfeiture will extinguish Harold von Hofe's equity in 32 Medley Lane, the temporal and spatial extent of his criminal activity make clear that his own actions eviscerated

any sanctity he might claim in his home. He made the conscious and deliberate decision to grow marijuana in his basement for approximately one year, an operation cut short only because the Branford Police and the DEA intervened. This was neither a spur of the moment decision nor a momentary lapse of judgment. Mr. von Hofe instead expended considerable time and resources obtaining the marijuana seeds from Holland, procuring the necessary equipment, and cultivating and cloning marijuana. If two cocaine sales in the amount of $250 warrants forfeiture of one's residence, *see 38 Whalers Cove*, 954 F.2d at 32, so too must the year-long cultivation of sixty-five marijuana plants in the basement of a home. Mr. von Hofe's lengthy and extensive involvement in the manufacture and distribution of marijuana from his basement, the seriousness of his offenses and their relationship to his other criminal activity, allow us to easily conclude that forfeiture of his one-half interest in 32 Medley Lane is not an excessive fine.

### B. Kathleen von Hofe's Interest in 32 Medley Lane

Forfeiture of 32 Medley Lane would be severe punishment when inflicted on Mrs. von Hofe. Given her undivided one-half interest in the property, forfeiture would amount to a $124,000 fine. Not only would forfeiture extinguish her substantial equity, it would amount to an eviction, destroying her "right to maintain control over [her] home, and to be free from governmental interference, . . . a private interest of historic and continuing importance." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993); *cf. Payton v. New York*, 445 U.S. 573, 601 (1980) ("[R]espect for the sanctity of the home . . . has been embedded in our traditions since the origins of the Republic"). A forfeiture of this magnitude requires close consideration.

Kathleen von Hofe bears minimal blame for the criminal activity that occurred at 32 Medley Lane. The record is devoid of any evidence indicating her use of drugs or her involvement in any criminal activity whatsoever. *See 32 Medley Lane*, 372 F. Supp. 2d at 267. We also have no evidence to suggest Mrs. von Hofe encouraged or promoted the offensive conduct occurring at 32 Medley Lane. This separates her from the *Milbrand* claimant, who acted as a strawman in a sham transaction to shield her son's criminal activity, 58 F.3d at 848, and the *Collado* claimant, who actively aided her son's narcotics trafficking by repeatedly warning his confederates about possible police surveillance, 348 F.3d at 327-28. And although Mrs. von Hofe may have known her husband smoked his marijuana with friends and family, we are bound by the district court's finding that she was not "aware that either her sons or husband were [sic] selling or bartering the marijuana in her home," which distinguishes her from the claimants in *Collado* and *Milbrand*, both of whom appear to have known the full extent of the narcotics trafficking that occurred on their property. *32 Medley Lane*, 372 F. Supp. 2d 255. The absence of proof on this point is relevant; not only does narcotics trafficking cause significant harm to the community, but a property owner who countenances narcotics trafficking might have a pecuniary incentive to permit the activity.

In saying this, we do not overlook the jury's conclusion that Mrs. von Hofe was not an innocent owner. The district court concluded that she "knowingly countenanced and allowed the illegal manufacture and distribution of a controlled substance to take place in her home." *32 Medley Lane*, 372 F. Supp. 2d at 267. Mrs. von Hofe both knew of the marijuana plants and, upon learning about their presence in the basement, did nothing to stop her husband's

horticultural hobby. *See* 18 U.S.C. § 983(d). Saying Mrs. von Hofe allowed her husband to engage in illegal activity on the property, however, must be taken in the context of the von Hofes' joint tenancy. Harold von Hofe did not need his wife's permission to use the property; joint ownership of 32 Medley Lane entitled Harold von Hofe to use of the property as if he was the sole owner. *See Houghton v. Brantingham*, 86 A. 664, 666 (Conn. 1913). It was thus Harold von Hofe's decision, almost thirty years into his marriage and as joint owner of 32 Medley Lane, to cultivate marijuana that put his wife in the present position. Mrs. von Hofe's culpability, falling at the low end of the scale, is best described as turning a blind eye to her husband's marijuana cultivation in their basement.

Serious penalties attend violations of 21 U.S.C. §§ 841 and 846, the offenses that transpired at 32 Medley Lane. Statutory penalties include a maximum $1 million fine and twenty years imprisonment, while the Guidelines allow a fine of $4,000 to $40,000, or even $1 million, and fifteen to twenty months imprisonment. Considering these penalties on the macro level might lead one to conclude a forfeiture valued at $124,000 constitutes appropriate punishment for the cultivation of sixty-five marijuana plants. However appropriate in the abstract such a punishment may be, the present forfeiture is designed to punish Mrs. von Hofe for her complicity and awareness of the criminal conduct occurring at her home, not simply the use to which her husband put their home.[4] Aside from the necessarily imprecise Guidelines calculation that arises

---

[4]As the Supreme Court has recognized, "imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual." *Robinson v. California*, 370 U.S. 660, 667 (1962). The inquiry, however, could not end there, as "the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Id.*

in an *in rem* forfeiture where a claimant need not be criminally convicted, the utility of the available penalties tends to further diminish where, as here, a claimant does not have knowledge of the full extent of criminal activity occurring on the property. Given the dearth of evidence indicating the extent of any profit or gain earned from the marijuana plants, and Mrs. von Hofe's lack of knowledge that her husband sold or bartered marijuana with his friends, neither the statutory maximum nor the Guidelines maximum prove decisive in gauging the excessiveness of the forfeiture in relation to Mrs. von Hofe's culpability.

The parties offer a variety of arguments to fill this lacuna. According to the government, Mrs. von Hofe's culpability is equal to that of her husband as his coconspirator, which would allow her to be punished as such. *See* Gov't Br. at 23. The jury found a substantial connection between 32 Medley and a conspiracy to manufacture and distribute marijuana is true, but that does not necessarily implicate Mrs. von Hofe as a member of the conspiracy. A conspiracy to violate the federal narcotics laws requires proof of an agreement. *See United States v. Delvecchio*, 816 F.2d 859, 864 (2d Cir. 1987). Mrs. von Hofe knowledge of her husband's illegal activity cannot suffice as evidence of collusion, for "knowledge of the existence and goals of a conspiracy does not of itself make one a coconspirator." *United States v. Cianchetti*, 315 F.2d 584, 588 (2d Cir. 1963). Had there been evidence beyond mere knowledge to prove an agreement with Mr. von Hofe, our task would be easy. The reasonably foreseeable actions of Harold von Hofe would be attributable to his wife. *See United States v. Milstein*, 401 F.3d 53, 72 (2d Cir. 2005). Without evidence indicating involvement beyond knowledge, the government finds itself characterizing Mrs. von Hofe's culpability in terms wholly unrelated to her actual

-23-

conduct.

Mrs. von Hofe suggests the punishments available for simple possession of marijuana should control, claiming her *Alford* plea to simple possession was the "offense giving rise to the forfeiture." 18 U.S.C. § 983(g)(2). Were this an *in personam* forfeiture, Kathleen von Hofe's argument might have some traction — an *in personam* forfeiture hinges on criminal conviction. *See Bajakajian*, 524 U.S. at 328. But criminal conviction of a claimant either in state or federal court is neither a necessary nor sufficient precondition to an *in rem* forfeiture. In this case, the government asserted a substantial connection between 32 Medley Lane and violations of 21 U.S.C. §§ 841 & 846. Only if the government carried its burden of proving this substantial connection by a preponderance of the evidence could the forfeiture occur. Because forfeiture of 32 Medley Lane turned on its connection to these two offenses, they are the "offense[s] giving rise to the forfeiture," not Mrs. von Hofe's *Alford* plea to possession of marijuana. 18 U.S.C. § 983(g)(2).

Pressing its contention that Mrs. von Hofe should suffer forfeiture for her knowledge of the conduct occurring at 32 Medley Lane, the government points to *Collado* and suggests that Mrs. von Hofe's knowledge of her husband's conduct likens her to a violator of 21 U.S.C. § 856, the so-called "crack house" statute. *See* Gov't Br. at 23. This statute prohibits a person from (1) knowingly, (2) opening or maintaining a building, (3) for the purpose of manufacturing, distributing, or using, a controlled substance. *Id.* § 856(a)(1); *see also United States v. Snow*, 462 F.3d 55, 70-71 (2d Cir. 2006). A violation of the crack house statute carries significant penalties: a statutory maximum punishment of twenty years imprisonment and a $500,000 fine, 18 U.S.C §

-24-

856(b); and a Guidelines maximum of six to twelve months imprisonment and a fine of $2,000 to $20,000 when sixty-five marijuana plants are at issue, *see* U.S. Sentencing Guidelines Manual §§ 2D1.8(a), 4A1.1, 5A, & 5E1.2(b)(3).

Any reliance on the crack house statute to assess Mrs. von Hofe's culpability or the seriousness of her offense would be erroneous. The government sought forfeiture of the von Hofe residence under the theory that it facilitated violations of 21 U.S.C. §§ 841 and 846, *viz.*, the manufacture and distribution of marijuana, and conspiracy to manufacture and distribute marijuana. Under the legal fiction of an *in rem* forfeiture, these are the offenses that taint the property and thus, for purposes of our proportionality review, the "offense[s] giving rise to the forfeiture." 18 U.S.C. § 983(g)(2). Indeed, this result is entirely consistent with *Collado*, for there the property was subject to forfeiture because it facilitated violations of the crack house statute and 21 U.S.C. § 841. 348 F.3d at 325.

On balance, forfeiture of Kathleen von Hofe's interest in 32 Medley Lane is an excessive fine. We do not dispute Congress's judgment regarding the pernicious effects caused by illicit drugs, either through health problems, lost productivity, or their connection to other illegal activity. Nor do we doubt that forfeiture of real property creates an incentive for property owners to abate any criminal activity occurring on their property. But the severity of the problem "cannot excuse the need for scrupulous adherence to our constitutional principles." *Grady v. Corbin*, 495 U.S. 508, 524 (1990). Mrs. von Hofe's offensive conduct boils down to her joint ownership of 32 Medley Lane and silence in the face of her husband's decision to grow marijuana in their basement almost thirty years into their marriage. And yet she is being

punished as if she were distributing drugs, when the district court concluded as a matter of fact that she had no knowledge of any distribution or remuneration. *See 32 Medley Lane*, 372 F. Supp. 2d at 255. The government cannot justify forfeiture of Mrs. von Hofe's interest in 32 Medley Lane, for the punishment bears no reasonable correlation either to her minimal culpability or any harm she caused.

### IV. Remaining Matters

The claimants have also argued the government's rejection of their offer to pay $248,000 in lieu of forfeiture violates the Excessive Fines Clause. *See* Claimant Br. at 18. Forfeiture of real property provides a "powerful deterrent" to narcotics traffickers and others who profit from illegal activity; such individuals might fear loss of their homes, bank accounts, and vehicles far more than a purely monetary fine or jail sentence. *Austin*, 509 U.S. at 620 (internal citation omitted). We see no reason to conclude the government has to accept the form of punishment requested by the claimants. The amount of the forfeiture may violate the Excessive Fines Clause, but the initial decision to pursue forfeiture does not.

Although we hold forfeiture of Kathleen von Hofe's entire interest in 32 Medley Lane would violate the Excessive Fines Clause, the case will be remanded to the district court. Congress provides: "If the court finds that the forfeiture is grossly disproportional to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution." 18 U.S.C. § 983(g)(4). This decision — whether and to what extent to reduce the amount to be forfeited by Mrs. von Hofe — may require factual development. Furthermore, because forfeiture of Mr. von Hofe's interest will extinguish

his joint tenancy with Mrs. von Hofe and create a tenancy in common between the government and Mrs. von Hofe, the appropriate partition of the property warrants consideration in the first instance by the district court.

## V. Conclusion

The judgment of the district court ordering forfeiture of Harold von Hofe's interest in 32 Medley Lane is AFFIRMED, but the judgment ordering forfeiture of Kathleen von Hofe's interest in 32 Medley Lane is REVERSED and REMANDED for further proceedings consistent with this opinion.