UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF PROPERTY LOCATED AT 5 REYNOLDS LANE, WATERFORD, CONNECTICUT, With All Appurtenances and Improvements Thereon, Defendant.

[Claimants Seth Marder and Beth Marder].

No. 3:09–cv–543 (CSH).

United States District Court, D. Connecticut.

Dec. 3, 2012.

David X. Sullivan, Ndidi N. Moses, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

William T. Koch, Jr., Lyme, CT, for Defendant.

## ORDER

CHARLES S. HAIGHT, JR., Senior District Judge.

In a Ruling entered on October 3, 2012 [Doc. 44] reported at 895 F.Supp.2d 305, 2012 WL 4514490 ("*Marder I* "), familiarity with which is assumed, the Court granted partial summary judgment to Plaintiff United States and held that the property located at 5 Reynolds Lane, Waterford, Connecticut, a residence owned jointly by Claimants Seth Marder and Beth Marder ("the Defendant Property"), is subject to forfeiture by the Government pursuant to the Controlled Substances Act, 21 U.S.C. § 881(a)(7), based upon a use of the Prop-

erty to facilitate a violation of § 841(a) of the Act: specifically, the manufacture of marijuana.

The parties were directed to take steps preparatory for trial. Counsel for the Claimants couple submissions on points of evidence with a Request for a Stay of Proceedings [Doc. 50]. The Government's time within which to respond to that request has not yet elapsed, but the Court requires no response. This Ruling denies Claimants request for a stay, and then considers evidentiary and trial questions.

## I. *Claimants' Request for a Stay*

Seth Marder and Beth Marder, the owners and Claimants of the Defendant Property, admit that they have grown marijuana plants on the Property and harvested marijuana crops. They assert that they each consume marijuana for medicinal reasons: Seth Marder to relieve the symptoms of bipolar disease, Beth Marder to relieve the symptoms of Lyme Disease.

The Claimants' Request for a Stay asserts that "Prior to November 6, 2012, seventeen states had passed laws legalizing marijuana for medical purposes," and that "Marijuana is now completely legal in the State of Colorado and in the State of Washington." [Doc. 50] at ¶¶ 1, 5. During the November 2012 elections, the legislatures of Colorado and Washington enacted laws decriminalizing possession of small amounts of marijuana for recreational purposes. The Marders and their attorney of record express the personal conviction that: "At this moment in the United States, the federal government must decide whether marijuana should be legal like alcohol and tobacco or remain in the same category as heroin, cocaine and the other most dangerous drugs." *Id.* at ¶ 6. In order to give the Legislative Branch of the federal Government the opportunity to act responsibly in this area, Defendant

(the Property) and the Claimants (who dwell therein) request "that this Court stay proceedings in this matter until the federal government acts to either block all state laws that recognize marijuana or legalize marijuana under federal law." *Id.* at ¶ 10.

■ Such a stay, if granted by the Court, would be open-ended as to time. During at least the past two years, the Congress of the United States has proven itself incapable of enacting laws on almost any important subjects, and no discernible basis exists for believing or hoping that the Legislative Branch would in the near future deal in a meaningful manner with the sensitive and complex narcotics laws. Even if one assumes that the Judicial Branch has the authority to stay proceedings in a litigated case while waiting for the Legislative Branch to do something within its purview, a stay of unspecified and unmeasurable duration would not be favored.

However, that consideration of timing does not arise because the constitutional duty of a lower federal court such as this one is to conduct litigation in manners consistent Supreme Court instructions, not to instruct the Congress in how to legislate, or the Executive Branch in what sort of cases it should prosecute. The sincerity of the Marders' views, evidently shared by their attorney, is manifest. The request for a stay proclaims: "The federal government's continued inaction is arbitrary and hypocritical"; and counsel expresses his desire not to represent clients "who violated the federal marijuana laws and were the last people in the United States to have their home confiscated by the United States government, while people in Colorado and Washington grow and possess marijuana freely." [Doc. 50] at ¶¶ 8, 9. The rights of the Claimants and their counsel to hold and express these opinions are

secured by the First Amendment. But such views, however sincerely held or forcibly stated, can furnish no basis or justification for a United States District Court staying a forfeiture action commenced by the Department of Justice to enforce a narcotics statute enacted by the Congress.

In order to ascertain the governing rule of law, one need look no further than the Supreme Court's decision in *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). A California statute authorized limited marijuana use for medicinal purposes. Notwithstanding that state law, federal agents enforcing the federal Controlled Substances Act ("CSA") (the same statute underlying the case at bar) seized and destroyed all cannabis plants cultivated by two California residents for medicinal purposes. The Supreme Court, construing the Commerce Clause, held that the power of Congress "to regulate interstate markets for medicinal substances encompasses the portions of those markets that are supplied with drugs produced and consumed locally," and that the federal CSA "is a valid exercise of federal power, even as applied to the troubling facts of this case." 545 U.S. at 9, 125 S.Ct. 2195. Accordingly, the Court rejected the California residents' challenge to the federal action brought against them under the CSA.

In a reflection foreshadowing the position taken by the Claimants at bar, the Court in *Gonzales* said that those supporting "the medical necessity defense"

for marijuana use might at some future time find an avenue to relief in "the democratic process, in which the voices of voters allied with these respondents may one day be heard in the halls of Congress. Under the present state of the law, however, the judgment of the Court of Appeals must be vacated." 545 U.S. at 33, 125 S.Ct. 2195.[1] By "the present state of the law," the *Gonzales* Court meant the narcotics laws enacted by Congress; and the CSA says now what it said then. While the Court's language indicates some sympathy for medicinal marijuana users, the case held that the federal statute trumped the contrary state law, and sustained seizure of the plants. *Gonzales* controls the case at bar *a fortiori*, since the Connecticut statutes, unlike those of California, prohibit the cultivation of marijuana for medicinal purposes: indeed, Seth Marder was prosecuted in a Connecticut court by state authorities for the acts underlying this federal forfeiture action.

A stay of this forfeiture action for the purpose of waiting to see if Congress changes the law would be beyond the powers of this Court, and contrary to the holding and rationale of *Gonzales v. Raich* and its progeny. Congress may at some future time change the law so as to decriminalize the use of marijuana for medicinal purposes. The Attorney General may at some future time decide not to prosecute such users or attempt forfeiture of their homes.[2] Those possibilities, salutary

---

1. The Ninth Circuit had granted the California marijuana-growing respondents a preliminary injunction on the ground that they had shown "a strong likelihood of success on their claim that, as applied to them, the CSA is an unconstitutional exercise of Congress' Commerce Clause authority." *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir.2003). The Supreme Court reversed that conclusion.

2. According to media accounts, a related question is currently being pondered by the Department of Justice. The issue has received some impetus as the result of the recent enactment by the Colorado and Washington legislatures of laws decriminalizing possession of small amounts of marijuana for recreational purposes. The *New York Times* edition of November 30, 2012 reported at page 27 (available at http://topics.nytimes.

as they may seem to some, lie within the discretion of the Legislative or Executive Branches of government. Implementing them falls outside the power of the Judicial Branch; and a court such as this one may not change the law, either directly or in the guise of staying proceedings under the federal CSA.

For these reasons, the Defendant/Claimants' application for a stay of these proceedings will be DENIED.

## II. *Trial Considerations*

In *Marder I,* the Court granted the Government partial summary and held that the Defendant Property was subject to forfeiture under the CSA.[3] That Ruling also stated that the Court "will consider separately the question whether the Excess Fine Clause of the Eighth Amendment bars forfeiture of both or either Claimant's interest in the Property." 895 F.Supp.2d at 320, 2012 WL 4514490 at *15. To that end, counsel were directed to file "written submissions stating whether they wish to offer further evidence with respect to the constitutional question in the case" and, if so, to file detailed offers of proof

describing the nature and source of the proffered evidence. *Id.*

The parties' responses to that direction [Docs. 45, 48 and 49] were modest, and the court had to prize a response out of the Government by means of a Supplemental Order [Doc. 47]. The present state of the record is that the Government has not specified any evidence it intends to offer on the constitutional question, and objects on relevance and admissibility grounds to four offers of proof by Claimants: (1) Claimants purchased the Defendant Property with the legal proceeds of the sale of their California home; (2) Since the seizure of the Defendant Property in April 2009, Claimants have reduced the balance of the mortgage on the property by $10,000; (3) Beth Marder has been truthful throughout the process; and (4) Seth Marder consumed marijuana for medical reasons and "as a result of the stress of this case and his mental illness, Seth Marder attempted to take his own life." [Doc. 45] at 2–4.

With respect to Claimants' third offer of proof, the Government professes sympathy for Seth Marder's "health issues," but contends that evidence of them (including a

com/top/reference/timestopics/subjects/m/marijuana/index.html):

> As the first states to treat small amounts of marijuana like alcohol, Colorado and Washington are poised to become national test cases for drug legalization. As advocates and state officials plan for a new frontier of legalized sales, they are also anxiously awaiting direction from the federal government, which still plans to treat the sale and cultivation of marijuana as federal crimes. Advocates for legalized marijuana are hoping the Justice Department yields. Despite some high-profile arrests of medical marijuana patients and sellers, the federal government has mostly allowed medical marijuana businesses to operate in Colorado, Washington, and 16 other states.

Whether or not to prosecute a particular individual for a particular offense, or to seek

forfeiture of specific property pursuant to a relevant statute, is generally left to the unfettered discretion of the Executive Branch of the Government. In the case at bar, that Branch is acting through the Office of the United States Attorney for this District, which has decided to seek forfeiture of the Defendant Property. This Court can play no part in that prosecutorial decision; nor can the Court nullify the United States Attorney's determination to seek forfeiture by granting a stay of proceedings on the grounds urged by Claimants and their attorney, however earnestly expressed.

3. That Ruling also denied Claimants' motion for an evidentiary hearing under *Franks v. Delaware.* That aspect of the case is not relevant to resolution of the issues addressed in this Ruling.

purported suicide attempt) is irrelevant and inadmissible on the forfeiture issues because the CSA's "prohibition of the 'manufacture' of marijuana does not create an exception for marijuana intended for personal use." [Doc. 48] at 5.

I will address those evidentiary objections *infra*, but it is first necessary to say something further about the impending trial.

In its response to the Claimants' offer of proof [Doc. 48], after the Government observed in text that the CSA "did not create an exception for marijuana intended for personal use," a footnote was dropped which began: "*Had* this case gone to trial, the Government would have also introduced evidence that the amount of marijuana at the Defendant Property far exceeded personal use quantities." [Doc. 48] at 5 n. 1 (emphasis added). The footnote then summarizes evidence to that asserted effect.

The Government's perception of the case is puzzling because this case *will* go to trial. I had thought *Marder I* made that plain enough. The Court there held that this case would follow the order Judge Kravitz employed in the *von Hofe I* case, 372 F.Supp.2d 248 (D.Conn.2005), *affirmed in part, reversed in part,* 492 F.3d 175 (2d Cir.2007). To recapitulate: the trial presents two phases. The first phase asks: Is the Defendant Property subject to forfeiture to the Government? The second asks: Would forfeiture of the Defendant Property violate the Claimants' constitutional bar against an excessive fine? In *von Hofe,* Judge Kravitz submitted the first phase to a jury, whose verdict concluded that the property was subject to forfeiture. He tried the second phase as a bench trial, sitting in effect as a Chancellor in Equity. Judge Kravitz held that forfeiture of the property was constitutional, both as to the husband and to the wife

(who owned the property jointly). The Second Circuit affirmed as to the husband but reversed as to the wife.

In the case at bar, there will be no trial to determine if the Defendant Property is subject to forfeiture. *Marder I* granted the Government summary judgment on that issue. There will now be a bench trial on the second issue: whether a forfeiture of the Claimants' interests in the Defendant Property passes muster under the Excessive Fines Clause.

The Second Circuit's 2007 decision in *von Hofe* furnishes the governing law. As in this case, the forfeiture in *von Hofe* was based upon the provisions of the CSA found in 21 U.S.C. § 881(a)(7). The Court of Appeals phrased the threshold question thus: "Only if the forfeiture may be characterized, at least in part, as punitive will it be considered a fine for purposes of the Excessive Fines Clause." 492 F.3d at 182 (citation omitted). That inquiry posed no difficulty for the court, which said: "Accordingly, there is no question that the forfeiture of 32 Medley Lane, brought under 21 U.S.C. § 881(a)(7), is a fine. The only issue is whether forfeiture of the von Hofe home is constitutionally excessive." *Id.* This is equally true of the sought-after forfeiture of 5 Reynolds Lane.

The issue of excessiveness implicates the Civil Action Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983, which the Second Circuit described in *von Hofe* as enacted by Congress "to establish a procedural framework to determine the excessiveness of an *in rem* forfeiture." 492 F.3d at 183. CAFRA places the burden on a claimant to "petition the court to determine whether the forfeiture was constitutionally excessive." 18 U.S.C. § 983(g)(1). "In making this determination, the court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture." *Id.* § 983(g)(2). At the trial, the Marders as

Claimants bear the burden of "establishing that the forfeiture is grossly disproportional by a preponderance of the evidence." *Id.* § 983(g)(3). If the forfeiture is grossly disproportional, the court should "reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution." *Id.* § 983(g)(4).[4] These are the principles that will govern trial of this aspect of the case at bar.

■ The Second Circuit makes it plain that in *von Hofe* that a forfeiture case such as this one, where two individuals (husband and wife) jointly own real property, requires the trial court to consider the circumstances of each individually, in order to determine whether forfeiture of his or her interest violates the Excessive Fines Clause. The application of that principle in *von Hofe* resulted in the Court of Appeals' affirming the forfeiture of Mr. Von Hofe's interest in 32 Medley Lane, but reversing the forfeiture of Mrs. Von Hofe's interest. It was the same house in both individual cases, and the same marijuana plants were growing there.

Trial of the case at bar will follow *von Hofe*'s model. I will determine the present market value of 5 Reynolds Lane, Waterbury, a fact which should not require extensive proof: it can be stipulated by the parties, or proved by the testimony of a real estate broker or brokers. If Seth Marder and Beth Marder own joint and undivided interests in the property, then for Excess Fines Clause analysis one-half of the property's market value will be regarded as the amount of the fine assessed against each individual. That is the procedure adopted by the Second Circuit in *von Hofe:* "The property at issue, with an undisputed value of $248,000, consists of a ranch house located on a small wooded plot in Branford, Connecticut. . . . Forfeiture of 32 Medley Lane would be severe punishment when inflicted on Mrs. von Hofe. Given her undivided one-half interest in the property, forfeiture would amount to a $124,000 fine." 492 F.3d at 179, 188. If the proof shows that the Marders' interest in 5 Reynolds Lane is divided and unequal, then the calculation of the individual fines will be based on their respective interests.

The Second Circuit's opinion in *von Hofe* is also instructive because the court, after an exhaustive review of prior Supreme Court and Second Circuit cases, declared: "We thus frame our excessiveness inquiry in terms of the following considerations . . ." The Court of Appeals then lists a number of specific considerations, and concludes that section of its opinion by saying: "Given the impossibility of establishing a formula for an excessive fine with surgical precision, this framework provides a useful template for the fact-finding process and the ultimate excessiveness inquiry." *Id.* at 186. I can take an appellate hint when I hear one. The trial in the case at bar will focus upon the considerations the Second Circuit articulated in *von Hofe.* There is no need to recite them in this Ruling. Counsel can read *von Hofe* for themselves.

Counsel should also pay close attention to the Second Circuit's analyses of the evidence with respect to Mr. von Hofe relevant to the affirmance of the District Court's forfeiture of his interest in the property, *id.* at 186–188; and the evidence with respect to the reversal of the forfeiture of Mrs. Von Hofe's interest, *id.* at 188–191. These discussions furnish guideposts to the sorts of evidence this Court will consider at the trial to determine separately the legality of forfeiting the interest

---

4. This paragraph in text is adapted from and quotes the Second Circuit's analysis of the CAFRA statute in *von Hofe. See* 492 F.3d at 183.

of Seth Marder and of Beth Marder in the property at 5 Reynolds Lane.

Turning now to the challenged offers of proof by Claimants, the Court rules as follows: ·

■ 1. The Marders will be allowed to offer proof that they purchased the Defendant Property with legal proceeds from the sale of their prior California home, and did not use funds generated by unlawful conduct. The Government argues correctly that such proof would not be relevant to the issue of whether 5 Reynolds Lane was subject to forfeiture, but that is not the issue to be tried in the second phase of the case, which is concerned with the possible excessiveness of a fine measured by the value of the forfeited property. In *von Hofe* the Second Circuit identified "the nexus between the property and the criminal offenses" as a consideration relevant to forfeiture, *id.* at 186. In *United States v. Milbrand*, 58 F.3d 841, 846 (2d Cir.1995), the Second Circuit cited and quoted with approval the Fourth Circuit's holding in *United States v. Chandler*, 36 F.3d 358, 365 (4th Cir.1994) that "determining the excessiveness" of an *in rem* forfeiture under the Eighth Amendment, the trial court should take into account *inter alia* "whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous," and "whether the purpose of acquiring, maintaining or using the property was to carry out the offense." In the present stage of the case, I think it is relevant, although certainly not decisive, for the Marders to show that their purchase of the Defendant Property was funded by the sale of their prior home, and not by the proceeds of an ongoing criminal enterprise. The weight of that fact, as opposed to its admissibility, is of course a different question.

■ 2. I will not receive evidence that the Marders have made payments required by their mortgage on the Defendant Property since the Government seized the property. The Marders were obligated to make these payments by their mortgage with the lending bank. Their compliance with the mortgage has no relevance to the present issues.

3. I will not allow Beth Marder to testify that "she has been truthful throughout the process." Beth Marder swearing *now* that she told the truth *then* has no relevance to the present issue. Her truthfulness on earlier occasions would become relevant only if the Government sought to impeach her testimony at trial by the making of earlier false statements. Such impeachment is allowed by the Federal Rules of Evidence in limited circumstances, but these circumstances have not arisen yet. The Court will assess Beth Marder's credibility at trial in the usual manner.

■ 4. I will not receive detailed evidence about Seth Marder's medical condition and medicinal use of marijuana, including his asserted suicide attempt. The relevance of such evidence to the forfeiture excessiveness issue is precluded by the Supreme Court's holding in *Gonzales v. Raich, supra*, that the CSA does not recognize "the medical necessity defense" as a bar to forfeiture. While the Second Circuit in *von Hofe* identified "the culpability of each claimant" as a consideration in an excessiveness inquiry, 492 F.3d at 186, the context makes it clear that "culpability" refers to the extent of a particular claimant's participation in the underlying criminal offense, and not to medical conditions that might have contributed (or in some eyes, even excuse) that conduct. I am bound to accept the Supreme Court's holding in *Gonzales* that medical necessity is not relevant to case where the federal government seeks to seize and destroy marijuana. There is no principled distinc-

tion between that holding and the conclusion, at which I now arrive, that medical necessity for a claimant is not relevant to an inquiry into the excessiveness of a forfeiture of property used to manufacture marijuana. The Second Circuit in *von Hofe* identified as the first consideration in that inquiry "the harshness, or gross disproportionality, of the forfeiture in comparison to the gravity of the offense." 492 F.3d at 186. Since an individual's freedom from medical necessity is not an element of the offense, the proffered medical evidence is not relevant to the excessiveness inquiry. Seth Marder may testify only that he consumed marijuana for a medical reason, and state the underlying infirmity. The trial will then move on. That limited testimony and the offer of proof, now rejected by the Court, will preserve the point for possible appellate review.

### III. *Trial Scheduling*

The case will be called for trial on April 9, 2013. The court has set aside three consecutive days for trial, which should sufficient, but can be enlarged in case of need. Counsel should regard themselves as engaged for trial before this Court on those days.

It is SO ORDERED.